RAMÓN A. MARTÍNEZ TORRES, peticionario, *v.* SANTOS AMARO PÉREZ y JOSÉ O. CASTELLANOS PACHECO, ALCAIDE, CÁRCEL DE DISTRITO DE PONCE, demandado.

*Número:* JO-85-15     *Resuelto:* 17 de diciembre de 1985

*Harry Anduze Montaño,* abogado del peticionario; *Héctor Rivera Cruz, Secretario de Justicia* y *Vanessa Ramírez, Procuradora General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Este recurso nos permite explorar las siguientes interrogantes: ¿Hay que notificar a un convicto que cumple su sentencia en probatoria de las causas que ameritan su revocación antes de su arresto y encarcelación? ¿Tiene derecho a una vista judicial? ¿En qué momento? ¿Qué garantías protegen al probando?

I

El 27 de marzo de 1984, Ramón Martínez Torres fue convicto y sentenciado por el Tribunal Superior, Sala de Ponce, a cumplir de 3 a 5 años de presidio en *probatoria* por violación a la Ley de Sustancias Controladas. Con fecha de 17 de abril de 1985 un oficial socio-penal sometió un informe al Fiscal de Distrito de Ponce sobre revocación de su probatoria por violar a las condiciones impuestas en la sentencia suspendida. Aproximadamente cuatro meses después, el 20 de agosto de 1985, dicho fiscal solicitó del foro judicial la revocación provisional de la probatoria, su ingreso inmediato a la cárcel y una vista sobre revocación permanente. Basado en tal informe, el 27 de agosto de 1985, el Tribunal Superior (Hon. José M. Ayala Cádiz), estimó que existía causa probable para creer

que Martínez Torres había violado alguna de las condiciones que le fueron impuestas y suspendió sumariamente los beneficios de la libertad a prueba. Oportunamente se diligenció su arresto y encarcelación. Se señaló una vista para el 27 de septiembre de 1985.

El 11 de septiembre de 1985 éste presentó en jurisdicción original ante este Tribunal una petición de hábeas corpus en que solicitaba su libertad. Adujo que su encarcelación fue ilegal y en violación al debido procedimiento de ley. Invocó los casos de *Morrissey* v. *Brewer*, 443 F.2d 942 (1971) y *Gagnon* v. *Scarpelli*, 411 U.S. 778 (1973), resueltos por el Tribunal Supremo federal. Al percatarnos de que durante cuatro (4) meses el fiscal no promovió la revocación, ante su reclamo, consideramos el recurso como *certiorari*, ordenamos su excarcelación y concedimos término al Procurador General para que compareciera por escrito a mostrar causa por la cual no debiéramos modificar la resolución recurrida. Autorizamos al foro de instancia la continuación de los trámites. (¹) Resolvemos con el beneficio de la posición del Procurador General.

## II

Por mandato de ley, el esquema de justicia criminal vigente provee un mecanismo de libertad a prueba a ser administrado por nuestros tribunales, conocido como sentencia suspendida, libertad a prueba o probatoria. (²) 34 L.P.R.A. sec. 1026 *et seq.* El mismo establece bajo qué delitos y requisitos un tribunal puede conceder este beneficio. 34 L.P.R.A. sec. 1027. En síntesis, el convicto beneficiado cumple su sentencia en libertad sin ser ingresado en una institución penal, sujeto

---

(¹) Aun así, la vista fue suspendida para el 25 de octubre de 1985. Posteriormente fue transferida para el 21 de noviembre de 1985.

(²) Entre otros, consúltese el informe sometido por la Comisión de Derechos Civiles de Puerto Rico sobre el programa de sentencia suspendida. 1968-CDC-012, pág. 714 *et seq.*; E. Meléndez Grillasca, *Manual de Sentencias*, Hato Rey, O.A.T., División de Servicios Judiciales, 1982, pág. 196 *et seq.*

a las condiciones que imponga el tribunal y a su custodia legal hasta la expiración del período fijado en su sentencia. 34 L.P.R.A. secs. 1027 y 1031. *Pueblo v. Román Santiago*, 109 D.P.R. 485, 490 (1980). El tribunal sentenciador puede revocar la libertad que disfruta el convicto en cualquier momento, si "fuere incompatible con la debida seguridad de la comunidad o con el propósito de rehabilitación". 34 L.P.R.A. sec. 1029.([3]) La convicción posterior por un nuevo delito implica "pérdida automática" de los beneficios de la sentencia suspendida. 34 L.P.R.A. sec. 1031.([4]) Al revocar, el tribunal sentenciador puede ordenar la reclusión del probando por el tiempo completo original de la sentencia o su remanente. 34 L.P.R.A. secs. 1029 y 1031.

▇▇▇ A tono con este diseño estatutario, nuestra casuística ha destacado la importancia del ejercicio de discreción judicial. Hemos afirmado reiteradamente que la libertad a prueba es un privilegio, un acto de mera gracia y no un derecho del convicto. *Pueblo v. Martínez Rivera*, 99 D.P.R. 568 (1971); *Pueblo v. Álvarez Maurás*, 100 D.P.R. 620 (1972). No obstante, esta concepción y énfasis jurisprudencial ha ido evolucionando paulatinamente en atención a la naturaleza del valor individual libertario envuelto, reduciéndose en gran medida la distinción entre "derecho" y "privilegio" con miras a reconocer en sabia y justa praxis judicial los derechos procesales

---

([3]) Dispone:

"La corte sentenciadora podrá en cualquier momento en que a su juicio la libertad a prueba de una persona fuere incompatible con la debida seguridad de la comunidad o con el propósito de rehabilitación del delincuente, revocar dicha libertad y ordenar la reclusión de la persona por el período de tiempo completo señalado en la sentencia cuya ejecución suspendió para ordenar la libertad a prueba, sin abonarle a dicha persona el período de tiempo que estuvo en libertad a prueba."

([4]) No es menester discutir en este caso si una convicción posterior implica la revocación "automática" de la libertad a prueba sin cumplirse la totalidad de los derechos que más adelante reconocemos. Compárense las expresiones vertidas en *Moody v. Daggett*, 429 U.S. 76, 80 n. 7 (1976); *Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1 (1978).

relativos que asisten a un probando que ha comenzado a disfrutar una libertad parcial. Aunque un tribunal en el ejercicio de su amplia discreción, bajo los términos de ley, puede conceder la libertad a prueba, hemos decidido que tal discreción no es absoluta. *Pueblo* v. *Sánchez González*, 90 D.P.R. 197 (1964); *Pueblo* v. *Pérez Bernard*, 99 D.P.R. 834 (1971). Menos puede ser arbitrario al revocarla. *Pueblo* v. *Vélez*, 76 D.P.R. 142, 148 (1954).

Así, el simple vocablo "privilegio" de antaño, ha transitado la locución compuesta "privilegio-derecho", hacia la conceptualización de "derecho limitado". Esta visión y cambio ha tenido mayor elaboración y definición en la jurisdicción federal. *Morrissey* v. *Brewer*, supra, pág. 482; *Gagnon* v. *Scarpelli*, supra, pág. 782 n. 4; *Graham* v. *Richardson*, 403 U.S. 365, 374 (1971); *Bell* v. *Burson*, 402 U.S. 535, 539 (1971); *Pickering* v. *Board of Education*, 391 U.S. 563, 568 (1968); W. Van Alstyne, *The Demise of the Right-Privilege Distinction in Constitutional Law*, 81 Harv. L. Rev. 1439 (1968). Su alcance se ha extendido, inclusive a cuando se pretenden hacer modificaciones en las condiciones de la probatoria que resultan en detrimento del probando. *Mempa* v. *Rhay*, 389 U.S. 128 (1967). Véase, además, 3 *Wright, Federal Practice and Procedure: Criminal 2d* Sec. 541 (1982) y casos allí citados.

Esta jurisprudencia nos sirve de punto de partida para contestar las interrogantes planteadas en este recurso desde la perspectiva de nuestra legislación.

## III

La libertad conferida a un convicto mediante el beneficio de sentencia suspendida no goza de la magnitud ni grado de la que disfruta un ciudadano común. No son equivalentes. La razón es sencilla: "Mientras una persona goza de libertad a prueba, su disfrute de la vida, su libre albedrío, está restringido, limitado, al cumplimiento de las condiciones fijadas al concedérsele esa gracia. *No puede decirse que es un hombre*

*enteramente libre."* (Énfasis suplido.) *Pueblo* v. *Vélez,* 76 D.P.R. 142, 149 (1954).

En este sentido, el interés e intensidad de libertad existente en la fase previa a un juicio criminal queda sustancialmente disminuido y alterado con el dictamen de culpabilidad. Adviértase, que en virtud de esa adjudicación de culpabilidad ya no le acompañan al convicto las garantías que la Constitución activa en dicha etapa anterior. La libertad condicionada que éste recibe con miras al cumplimiento y ejecución de la sentencia y pena, no deja sin efecto ni anula los procedimientos anteriores, como tampoco modifica la determinación de culpabilidad. Por ende, el delineamiento de garantías procesales, forzosamente, no puede perder de vista el ámbito limitado resultante de esta realidad que nos sirve de clave decisoria: el trámite de revocación de una sentencia suspendida no puede igualarse al procedimiento criminal presentencia. En *Morrissey* v. *Brewer,* supra, se enfatizó que "en ningún sentido ha sido nuestra idea equiparar la segunda etapa de revocación de probatoria a la de un procedimiento criminal; es una pesquisa limitada; el proceso debe ser lo suficientemente flexible como para considerar evidencia tales como cartas, afidávit y otro material de ordinario inadmisible en un proceso criminal adversativo". (Traducción nuestra.) Pág. 253.

Aun así, una vez el Estado concede este "derecho limitado" no puede cancelarlo con abstracción total de las normas básicas constitucionales aplicables en esta etapa *post sentencia.* Con todas las limitaciones que esta libertad condicionada representa, no puede negarse que estamos ante un valor fundamental acreedor de protección tanto por nuestra Constitución como por la de Estados Unidos. *Pueblo* v. *Vélez,* supra; *Román* v. *Delgado,* 82 D.P.R. 598 (1961); *Pueblo* v. *Torres Estrada,* 112 D.P.R. 307 (1982); *Vázquez* v. *Caraballo,* 114 D.P.R. 272 (1983). Véanse *Gagnon* v. *Scarpelli,* supra y *Morrissey* v. *Brewer,* supra. En suma, no puede privarse a una

persona de su libertad absoluta o limitada sin cumplirse con los requisitos mínimos del debido proceso de ley que corresponden a este momento.

La armonización de este derecho con el no menos importante interés de la "debida seguridad de la comunidad" plasmado en nuestra ley, aunque compleja, no es imposible.

■ En *Gagnon* v. *Scarpelli*, supra, pág. 661, el Tribunal Supremo federal logró equilibrarlos persuasivamente al sostener, en esencia, que "un probando tiene derecho a dos vistas, una preliminar al momento de su detención y arresto para determinar si existe causa probable de que haya violado su probatoria, y otra vista, un tanto más abarcadora, antes de la determinación de revocación final". (Traducción nuestra.) Se señaló específicamente que habrían de seguirse las condiciones esbozadas en *Morrissey* v. *Brewer*, supra, pág. 662.

■ Bajo este enfoque, las garantías mínimas que el debido proceso de ley exige al amparo de la Constitución federal para revocar los beneficios de libertad bajo palabra o sentencia suspendida son: (1) una vista preliminar para determinar si hay causa probable para creer que el probando ha violado las condiciones de su probatoria, y (2) una vista final antes de la decisión definitiva sobre si la probatoria será revocada. Advertimos, sin embargo, que no es necesario celebrar la primera vista (preliminar) cuando, durante el trámite de solicitud de revocación, no se arresta ni encarcela al probando. *Moody* v. *Daggett*, 429 U.S. 78, 86–87 (1976); *Petition of Merdinger*, 539 P.2d 1185, 1190 (1975); *Pearson* v. *State*, 241 N.W.2d 490, 492–493 (1976).

En la primera vista, por su naturaleza de carácter informal y sumario, se auscultan probabilidades. El probando tiene derecho a: conocer las alegadas violaciones a las condiciones de la probatoria; oportunidad de comparecer y presentar evidencia a su favor; confrontar los testigos adversos, excepto

que por razones de seguridad del informante no se permita; un juzgador independiente, y breve informe escrito de la vista.

Posteriormente, en la vista final se le debe garantizar al menos: (a) una notificación escrita de las alegadas violaciones a la probatoria; (b) un examen de la prueba en su contra; (c) la oportunidad de ser oído personalmente y presentar testigos y evidencia documental a su favor; (d) el derecho a confrontar y contrainterrogar los testigos adversos, a menos que el juzgador examinador determine por razones de seguridad del informante justa causa para no permitir tal confrontación; (e) un juzgador neutral e independiente que puede ser uno solo o un cuerpo pluralista, aunque no el oficial sociopenal a cargo de la suspensión del convicto, tal como lo es la tradicional Junta de Libertad bajo Palabra, cuyos miembros no tienen que ser necesariamente funcionarios judiciales o abogados, y (f) determinaciones escritas de los hechos hallados probados, así como de la evidencia en que la decisión se basó, y las razones para revocar la probatoria. *Gagnon* v. *Scarpelli*, supra, pág. 786.

## IV

El contraste entre este cuerpo de normas procesales que dan vida a la fórmula constitucional del debido proceso de ley y las lagunas en nuestro esquema legislativo es evidente. Nuestra ley de sentencias suspendidas está huérfana de procedimientos claros y específicos para revocar una probatoria. [5] Sin embargo, como apuntáramos anteriormente, ese rezago no ha sido total. Con anterioridad a los pronunciamientos del Tribunal Supremo federal, habíamos resuelto que para revocar la libertad a prueba el tribunal tendría que tener motivo justificado y dar al convicto la oportunidad de ser oído. *Pueblo* v.

---

[5] Desde 1968 se ha solicitado que se reglamente este procedimiento de revocación. Véase 1968-CDC-012, *supra.*

*Vélez*, supra, pág. 143. (⁶) Más aún, al momento de determinarse si un acusado puede cumplir la pena bajo el régimen de sentencia suspendida, el debido proceso de ley le reconoce el derecho a ver el informe preparado por el oficial probatorio y la oportunidad de ser oído. *Pueblo* v. *Torres Estrada*, supra.

■ Reiteramos que existe un interés libertario que no puede ser afectado en violación al principio constitucional del debido proceso de ley. Sólo nos resta analizar su contenido. En esta tarea es imperativo considerar los requisitos mínimos exigidos constitucionalmente.

■ Hasta tanto la Asamblea Legislativa actúe afirmativamente para reglamentar el trámite relativo a una revocación de sentencia suspendida, resolvemos que la cláusula del debido proceso de ley de nuestra Constitución requiere lo siguiente como mínimo:

Si el Ministerio Fiscal interesa obtener una revocación sumaria de la probatoria y por ende el arresto y encarcelación inmediata (⁷) del probando, éste es acreedor a una *vista sumaria inicial* para evaluar si existe causa probable para creer que ha violado las condiciones de su probatoria. La solicitud sobre revocación se hará ante cualquier juez, quien al momento de recibirla determinará si ordena la detención inmediata del probando o lo cita para la *vista sumaria inicial*. La determinación discrecional de arrestar o citar en esta etapa estará

---

(⁶) En torno a la libertad bajo palabra, beneficio germano a éste, se ha establecido un procedimiento estatutario para su revocación. 4 L.P.R.A. sec. 1501 *et seq.* El mismo incluye ambas garantías constitucionales mínimas tales como notificación y vista. 4 L.P.R.A. sec. 1505. *Lebrón Pérez* v. *Alcaide*, 91 D.P.R. 567, 570 (1964); *Román* v. *Delgado*, 82 D.P.R. 598 (1961). A diferencia del beneficio de sentencia suspendida que es administrado por los tribunales, éste es administrado por la Junta de Libertad bajo Palabra.

(⁷) Según antes expresado, no es automática ni obligatoria la celebración de la vista sumaria inicial cuando el probando no es arrestado ni encarcelado. En tales circunstancias, procede se oriente el trámite según lo provisto más adelante para la *vista final* de revocación, ya que el convicto continúa disfrutando de su libertad condicionada.

fundada, al menos, en un examen del oficial socio-penal y su informe en torno a la gravedad de las condiciones alegadamente incumplidas, récord criminal previo, conducta durante la probatoria y de aquellas otras circunstancias pertinentes. Si el juez opta por citarlo, y no comparece el probando, podrá ordenar su arresto inmediatamente. La orden de citación o arresto deberá notificar concisa, pero adecuadamente, las alegadas violaciones a las condiciones de la probatoria. El probando, si es arrestado, deberá ser llevado en el plazo más breve posible (en circunstancias normales no deberá exceder el término de 72 horas), a la presencia de un magistrado —juez Superior, de Distrito o Municipal, sujeto a lo más adelante expuesto— para celebrarle la *vista sumaria inicial*. En ésta, aquél tendrá la oportunidad de ser oído y presentar evidencia a su favor. Podrá a su vez confrontar al oficial socio-penal promovente y a los testigos adversos disponibles en esta etapa, a menos que se demuestre necesidad de establecer restricciones para garantizar la seguridad y anonimato ofrecidas por el oficial socio-penal a los entrevistados para fines de su informe.([8]) La vista será de carácter informal y las Reglas de Evidencia sólo serán aplicables flexiblemente de modo que no desnaturalicen o sirvan de obstáculo a la pronta y justa determinación de si existe o no causa probable. Las Reglas de Procedimiento Criminal regirán en la medida en que no sean incompatibles con la naturaleza sumaria e informal de la vista. El magistrado llevará una sucinta relación y constancia escrita de los procedimientos y de su decisión. El probando podrá estar asistido por abogado.

Después de esta primera vista, si es menester, el probando tendrá derecho a la celebración de una *vista final*. El peso de la prueba recaerá sobre el Ministerio Fiscal. El probando tendrá derecho a recibir notificación escrita previa con antela-

---

([8]) Véanse *Pueblo* v. *Torres Estrada,* 112 D.P.R. 307 (1982) ; *Pueblo* v. *Bou Nevárez,* 111 D.P.R. 179 (1981).

ción suficiente de las alegadas violaciones a la probatoria, prepararse adecuadamente y estar representado por abogado. Sujeto a la protección de aquellos entrevistados a quienes se les garantizó seguridad y anonimato, podrá confrontar la prueba testifical en su contra y presentar evidencia a su favor. La decisión formulada a base de la preponderancia de la prueba será reducida a escrito por el juez y reflejará las determinaciones de hechos básicos, evidencia en que se basó y las razones que justifican la revocación. Salvo justa causa o acuerdo de las partes con la anuencia del juez, esta *vista final* sobre revocación deberá celebrarse dentro de un término que no exceda de treinta (30) días a partir de la celebración de la *vista sumaria inicial* que haya culminado en la revocación provisional y encarcelamiento. El tribunal podrá consolidar ambas vistas si la primera se suspendiera a petición o por causas atribuibles al probando, a solicitud de su abogado, o cuando el Ministerio Fiscal no solicite o logre obtener el arresto y encarcelación del probando. En esta última circunstancia, la vista final de revocación definitiva se señalará mediante notificación y celebración al probando con no menos de treinta (30) días de antelación.

## V

Finalmente, sólo queda examinar si la *vista sumaria inicial* y la *vista final* aquí pautadas pueden ventilarse ante el mismo juez que sentenció originalmente al probando. El requisito establecido en *Gagnon* v. *Scarpelli*, supra y *Morrissey* v. *Brewer*, supra, de que el juzgador en las mismas sea neutral e independiente, a la luz de las circunstancias peculiares allí expuestas, va dirigido a evitar que el oficial probatorio sea juez y parte. Su razón de ser estriba en el temor de que dicho funcionario —quien recomienda la revocación y en ocasiones es testigo clave— no siempre pueda ser totalmente objetivo en la evaluación de sus propias recomendaciones. Compárese, *Edwarsen* v. *Gray*, 352 F. Supp. 839 (1972). Por

ende, la decisión inicial y la definitiva deben trasladarse a otro funcionario o cuerpo independiente que no haya tenido contacto anteriormente con la prueba a someterse en apoyo de la revocación de sentencia. *Morrissey* v. *Brewer*, supra, págs. 485–486.

■ De ordinario esta preocupación no está presente en los trámites de revocación de sentencias suspendidas en los tribunales. Distinto al magistrado que interviene en la *vista sumaria inicial*, el juez sentenciador no ha tenido contacto activo previo con los *hechos posteriores* alegadamente incumplidos que motivan la solicitud de revocación. Al llegar el asunto a su consideración, solamente está familiarizado con el delito o delitos por los cuales sentenció originalmente al convicto, y aun así, ejerció su ánimo y discreción a favor de éste al suspenderle la sentencia. El juez, por su entrenamiento, autodisciplina y vocación específica está singularmente capacitado para evaluar objetivamente la prueba. Está dedicado exclusivamente al servicio de la justicia. En el descargo de ese diario ministerio, su conciencia e inteligencia prístina lo llevan a descartar los juicios previos o prejuicios que a veces obnubilan a otras personas. *Pueblo* v. *Arreche Holdun*, 114 D.P.R. 99, 115 (1983); *Pueblo* v. *De Jesús Rivera*, 113 D.P.R. 817, 824 (1983).

En cuanto a la dinámica judicial envuelta en la etapa final de la sentencia, se acepta que "es un acto personal del juez (o del magistrado presente), pero no es un acto personalista. No es un acto libérrimo, de plena autonomía en la determinación, sino condicionado por la función que se desempeña, y por la finalidad del propio acto, que, en esencia, es decidir definitivamente las cuestiones del pleito. En este sentido, la sentencia es una respuesta y un mandato. Pero su formulación ha de ir precedida de una compleja operación mental, en la que intervienen la sensibilidad, la inteligencia y la cultura del juez. *Cierto que también interviene la voluntad, pero esta voluntad no es la pura y libre del juez, sino que aparece subordinada al*

*proceso que resuelve y al Derecho objetivo*". (Énfasis suplido.) C. Rodríguez Aguilar, *La Sentencia*, Barcelona, Ed. Bosch, 1974, págs. 13–14.

En lo concerniente a la sentencia original en casos criminales hemos indicado en *Santiago* v. *Jones*, 74 D.P.R. 617, 625–626 (1953):

> Después de declarada la culpabilidad de un acusado, la misión del juez es distinta. Mientras en la parte del proceso criminal que conduce a la declaración de culpabilidad su obligación principal es velar por la limpieza absoluta del procedimiento mediante el cual se va a privar a un ser humano de su libertad, en el pronunciamiento de la sentencia tiene que medir otros riesgos. Su posición es la de un sociólogo ante el complejo humano en su totalidad. Para ello tiene que medir tanto el riesgo que cualquiera represión inusitada o vindicativa pueda representar para el sentenciado, como el riesgo que cualquier represión inadecuada o ineficaz pueda representar para la sociedad. Uno de los elementos de juicio que un juez sentenciador puede utilizar para determinar qué clase de sentencia debe imponer en cada caso, es el grado de adaptabilidad que todavía pueda desarrollar un delincuente para el acatamiento pacífico a las prácticas legales establecidas por el orden público. Cada conducta antisocial constituye un problema distinto que debe ser resuelto por su propia virtualidad, dentro de los más altos ideales de servicio a la causa del hombre. Pero ello, no significa que un juez sentenciador deba disolver el poder coercitivo del estado dentro de un vicioso romanticismo que tienda a convertirse en un contrasentido de la justicia.

Por la naturaleza del acto, esa visión se extiende al trámite de revocación. Con buen razonamiento se ha dicho que "[e]n su sentido real, la revocación de probatoria es una resentencia. Véase *Nicholas* v. *United States*, 527 F.2d 1160, 1162 (9no Cir. 1974). El dictar sentencia probablemente es la tarea más difícil de un juez. Es un deber complejo en que entran en juego innumerables factores. Al final, la sentencia se basa en la evaluación del convicto por el juez. Una resen-

tencia por revocación de probatoria conlleva más que la total evaluación del récord del probando. El juez ya lo ha sentenciado, pero el convicto, hasta cierto punto, ha violado la confianza en él depositada al infringir los términos de su probatoria. Es importante para el juez estar familiarizado con las circunstancias que rodearon la conducta intermedia del probando. Si la violación es severa, puede proceder una acción drástica". (Traducción nuestra y escolio omitido.) *Banks* v. *United States*, 614 F.2d 95, 99 (1980).

Nuestra propia Ley de Sentencias Suspendidas sigue esa orientación. En una clara referencia al juez sentenciador, expresamente dispone que el probando queda sujeto a "la custodia legal del tribunal". Las Reglas de Procedimiento Criminal están igualmente cimentadas en el principio elemental de que la sentencia original sea dictada por el juez que presidió el proceso. Únicamente por razones de peso, tales como haber cesado en el cargo, muerte u otra inhabilidad puede intervenir y sustituirlo otro juez. Regla 186 (b). Es obvio, pues, que la interacción y analogía de ambos procesos y los factores envueltos, afianzan lógicamente la conclusión de que el juez sentenciador original normalmente debe presidir y resolver la vista final de revocación de probatoria.

■ Ahora bien, en consideración a la naturaleza, propósito, ámbito, participación, contacto previo con la prueba y demás factores envueltos, la situación es distinta respecto *a la vista sumaria inicial*. En ésta el juez interventor no sólo ha estado expuesto y conoce parte de la prueba, sino que la ha evaluado, y en términos de probabilidades le ha adjudicado un valor y alcance probatorio contra el probando. Aspiramos a lograr que nuestro sistema de administración de justicia honre al máximo los postulados de neutralidad e imparcialidad en que se afianza. "Y esa imparcialidad es la que origina la confianza en la justicia por parte de la ciudadanía; y es en esa confianza que se basa el respeto que la ciudadanía tiene en los jueces. Es obligación de los tribunales velar porque esa

confianza nunca desaparezca." *Pueblo* v. *Toro Goyco*, 84 D.P.R. 492, 499 (1962). En la consecución de ese ideal, resolvemos con carácter prospectivo que: (⁹) (1) la *vista sumaria inicial* y la *vista final* deben dilucidarse ante jueces distintos, y (2) no existe impedimento legal alguno para que como norma general, la *vista final* sea ventilada ante el mismo juez que sentenció originalmente al probando. (¹⁰)

Por los fundamentos expuestos, *se dictará sentencia y se devuelve el caso al tribunal de origen para la continuación de los procedimientos compatibles con lo aquí resuelto.*

---

(⁹) En *Gagnon* v. *Scarpelli*, 411 U.S. 778 (1973), la probatoria se revocó porque al probando no se le concedió ninguna de las dos vistas. Ahora bien, cuando el probando tuvo el beneficio de una vista definitiva, aunque no la preliminar, se ha decidido que ello es un error *no perjudicial.* Se parte de la premisa que aun habiéndose celebrado la vista preliminar, de todos modos hubiera culminado en la revocación de la probatoria, y por tanto, no hay nada que proveer por vía de revisión judicial. El trámite posterior subsana el error procesal. Eg., *Collins* v. *Turner*, 599 F.2d 657, 658 (1979); *Lambur* v. *Chew*, 356 F. Supp. 751, 752–753 (1973); *State* v. *Morales*, 293 A.2d 672, 675 (1972).

(¹⁰) Esta decisión gira sobre la revocación de la probatoria. No impide al juez de instancia que originalmente suspenda la sentencia en determinado caso, intervenir en trámites de seguimiento periódicos pautados con el propósito de ejercer una mejor supervisión sobre el probando.