EL PUEBLO DE PUERTO RICO, recurrido, *v.* RAMONITA NIEVES MASSA, peticionaria y recurrente.

*Número:* CE-90-921          *Resuelto:* 7 de abril de 1993

*Rubén Mojica Rivera* e *Ivette Aponte Nogueras*, abogados de la peticionaria; *Jorge E. Pérez Díaz, Procurador General, Blanca A. Díaz Segarra, Procuradora General Auxiliar,* y *Norma Cotti Cruz, Subprocuradora General,* abogados de El Pueblo.

## SENTENCIA

## I

El 10 de diciembre de 1986, Ramonita Nieves Massa fue acusada de infringir el Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401, (CR-G87-1347), a saber, distribuir 1.0060 gramos de cocaína. El 7 de abril de 1988, como parte de un preacuerdo con el Ministerio Fiscal, alegó culpabilidad por posesión. Art. 404

(24 L.P.R.A. sec. 2404). El 27 de mayo, el tribunal —al amparo del Art. 404(b) de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404(b)— le concedió una probatoria condicional por dos (2) años.

Vigente dicho término, el 26 de julio de 1989 se presentó una denuncia en su contra —y en contra de dos (2) personas más— por alegadamente poseer cocaína con la intención de distribuirla. Ello surgió de una confidencia. El agente José Flores Villalongo, de la División de Drogas de Carolina la investigó, obtuvo una orden y allanó la residencia de Nieves Massa. Le ocuparon seis mil seiscientos veintiocho dólares con treinta y cinco centavos ($6,628.35) en efectivo y 215.40 gramos de cocaína.

El 11 de octubre de 1989 el Ministerio Público solicitó la revocación de la probatoria, aduciendo la comisión de ese nuevo delito. Mientras estaba pendiente la vista preliminar, en varias ocasiones se pospuso la *vista de revocación* a solicitud de la peticionaria. Finalmente, el 29 de mayo de 1990, el Hon. Carlos Colón Santini determinó que no existía causa para acusar debido a unos defectos en la orden de allanamiento. El Ministerio Fiscal no solicitó una vista preliminar en alzada.

Acaecieron otras suspensiones sobre la vista de revocación. Después se celebró la vista sumaria inicial, en la cual el tribunal (Hon. Pierre E. Vivoni, Juez) determinó que habían causa probable para estimar que se había violado las condiciones 5, 6, 7 y 11 de la Resolución de 27 de mayo de 1988. A petición de la defensa, señaló la vista *final* para el 20 de abril de 1990. Nuevamente, la defensa pidió su suspensión y *manifestó que renunciaba a cualquier término que le pudiera favorecer a su representada. Posteriormente se produjeron otras suspensiones.*

En el ínterin, el 29 de junio de 1990 el oficial probatorio compareció al tribunal y *solicitó el archivo*, basado en que el Informe de Violación de Condiciones de la Probatoria

había obedecido a la nueva denuncia por infracción a la Ley de Sustancias Controladas de Puerto Rico, la cual —según expuesto— no había prosperado en la vista preliminar. Señaló, además, que el 27 de mayo de 1990 había expirado el período de supervisión.

No obstante, el 18 de julio el Ministerio Público pidió que se extendiera el período probatorio. El tribunal fijó para el 10 de agosto la vista que a tales efectos la ley provee. Art. 404(b), *supra*. En esta fecha, la defensa solicitó la suspensión fundamentada en que Nieves Massa no había sido citada personalmente. El tribunal accedió, pero resolvió que mantenía jurisdicción para dictar sentencia o extender el período de supervisión. Señaló la vista *final* de revocación para el 2 de noviembre.

El día 2 la defensa pidió el archivo argumentando que se había cumplido con el período probatorio y no había mediado causa en la vista preliminar por el nuevo delito. Ante este reclamo, el técnico sociopenal —y después el Fiscal— informaron al tribunal que poseían información confidencial de que Nieves Massa estaba en el trasiego de drogas. La defensa pidió posponer el caso, pues desconocía esos extremos. Se señaló para el 9 de noviembre.

Sin embargo, el 5 de noviembre de 1990 la defensa solicitó la suspensión basada en unos compromisos previos y por necesitar "un tiempo razonable para poder prepararnos para dicha vista por lo que, solicitamos se suspenda para el 16 de noviembre de 1990". Escrito para mostrar causa, *Exhibit* 8. Llamado el caso para el 9 de ese mes sin su comparecencia ni la de su abogado, el Ministerio Público incluyó el nombre de tres (3) testigos más y solicitó que se le notificara al abogado por la vía telefónica. El tribunal así lo ordenó y, además, dispuso la notificación de copia de la minuta.

Finalmente, durante los días 16 de noviembre y 7 de diciembre de 1990 se celebró la vista *final* de revocación.

Testificó Domingo Reyes, Técnico de Servicios Sociopenales. En resumen, atestó que presentó su Informe de Querella por el otro caso de sustancias controladas —comisión de nuevo delito— que no prosperó en vista preliminar. Solicitó el archivo de la sentencia suspendida por entender que ésta se había cumplido. Atestó, además, que a Nieves Massa la relacionaban en la comunidad con el trasiego de drogas. Realizó dos (2) visitas a la comunidad el 20 de agosto y el 10 de octubre de 1990. Le informaron que continuaba en ese tipo de actividad criminosa. Fue informado que Nieves Massa había salido a comprar un apartamento en Estados Unidos, aun cuando ella ni su esposo trabajaban.

En la segunda visita, las personas entrevistadas le informaron que tenía un carro nuevo; que no trabajaba; que fue a Estados Unidos a comprar una casa; que estaba en el trasiego de drogas; que ella mantenía el punto de drogas en el barrio, y que a su casa llegaban personas ajenas a la comunidad. En ambas ocasiones hubo personas que se abstuvieron de opinar. Atestó que de la investigación confirmó que tenía el carro nuevo y que no trabajaba; que había salido de Puerto Rico a Estados Unidos sin permiso del tribunal y sin que el oficial probatorio tuviera conocimiento de antemano; esto último lo *admitió* la probando.

Continuó declarando que con ella también residían Héctor Sánchez Nieves, recluido en la cárcel por sustancias controladas, Inoris Sánchez Nieves e Iris Nieves Massa, acusadas por sustancias controladas.

Desde que conoce y supervisa a Nieves Massa, ella ha tenido la misma casa, pero cuando comenzó a cumplir la probatoria la casa carecía de la segunda planta. La construyó mientras estaba en probatoria y desempleada. Las personas que entrevistó eran confiables. El esposo de Nieves Massa trabajaba en "chiripas" en una guaguita haciendo mudanzas. A preguntas de la defensa dijo que la

probando nunca le manifestó que el auto nuevo lo había comprado su hermano ni que él le hubiese suplido el dinero.

El Ministerio Fiscal presentó, y se admitieron en evidencia, cuatro (4) fotografías de la casa y, además, prueba documental a los efectos de que ella fue quien compró el automóvil nuevo —Cavalier 1989, tablilla AUF 143— y que pagó en *efectivo* catorce mil ciento sesenta y tres dólares ($14,163).

El otro testigo fue José D. Flores Villalongo. Atestó sobre las observaciones directas que hizo y que dieron base a la orden de allanamiento. Era policía con cuatro (4) años de experiencia y había participado en aproximadamente cincuenta (50) allanamientos.

El 19 de julio de 1989, luego de estar en el punto de vigilancia, observó a una persona —a quien había visto el día anterior— al otro lado de la calle. Vio llegar un Toyota que se estacionó en la calle frente a esa persona. Hablaron y ambos caminaron hacia la residencia de Nieves Massa. Ella estaba en la planta baja. Luego de conversar, ella subió a la segunda planta, bajó y le entregó al individuo del automóvil una bolsa plástica transparente que contenía polvo blanco de supuesta cocaína. El individuo del Toyota extrajo un objeto plateado del automóvil, pesó la bolsa plástica y del bolsillo de su pantalón extrajo dinero y lo entregó a Nieves Massa.

Continuó atestando que apreció en onza y media la cantidad de polvo blanco en la bolsa plástica; que el polvo llegaba hasta la mitad de dicha bolsa, y que tendría un valor de dos mil dólares ($2,000) a dos mil quinientos dólares ($2,500). Luego se retiró, solicitó y obtuvo la orden de allanamiento.

En la declaración jurada para la orden de allanamiento describió a Nieves Massa de tez blanca y que medía 5'7". No albergaba dudas de que fue la persona que vio y realizó

la transacción de drogas. Con esta prueba, el tribunal revocó la probatoria y la sentenció a dos (2) años de presidio.

A solicitud de Nieves Massa, acordamos revisar mediante orden para mostrar causa.

## II

La peticionaria Nieves Massa realmente no impugna la suficiencia de la prueba. La esencia de su planteamiento es que en el trámite de revocación de la probatoria se incurrieron en unas alegadas violaciones en la notificación. No tiene razón.

*Primero*, los autos originales revelan que indubitadamente, en tiempo, fue debidamente citada y recibió una notificación adecuada según las normas establecidas en *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717 (1985). Compareció a todos los señalamientos, excepto el 10 de agosto de 1990, en que estuvo representada por su abogado, Lcdo. Rubén Mojica Rivera. El tribunal ejerció su jurisdicción correctamente. *Pueblo v. Pacheco Torres*, 128 D.P.R. 586 (1991).

*Segundo*, no podemos confundirnos. Los antecedentes expuestos revelan dos (2) procesos separados e independientes: vista preliminar y revocación de probatoria. La prueba no desfilada por el Ministerio Fiscal durante la *vista preliminar* celebrada el 29 de mayo de 1990 no dispuso ni adjudicó definitivamente el valor que los testigos pudieran generar en la vista final de revocación. *Cf. Pueblo v. Texidor Seda*, 128 D.P.R. 578 (1991). Repetimos: sencillamente estamos frente a procesos y casos distintos, no susceptibles de ser adjudicados como uno solo.

Y *tercero*, la presunción de testimonio adverso —aquel anunciado y no presentado— es inaplicable a las vistas preliminares. En esas vistas, el Ministerio Fiscal no viene

obligado a presentar toda su prueba. *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 653, 668 (1985).

*Se expide el auto y se confirma la revocación y sentencia dictadas.*

Lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Alonso Alonso emitió una opinión disidente, a la cual se unió la Juez Asociada Señora Naveira de Rodón.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión disidente del Juez Asociado Señor Alonso Alonso, a la cual se une la Juez Asociada Señora Naveira de Rodón.

Disiento de la sentencia del Tribunal que confirma la revocación de la probatoria y de la sentencia que le impuso a la peticionaria dos (2) años de presidio. A la peticionaria no se le notificó adecuadamente por escrito la alegada conducta violatoria de las condiciones de la probatoria, *habiendo ya cumplido el término de ésta*, y no se produjo el *quantum* de prueba necesario para ordenar su revocación. Veamos los hechos.

I

En diciembre de 1986 Ramonita Nieves Massa (la peticionaria) fue acusada de distribuir cocaína. Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2401. El 7 de abril de 1988 hizo alegación de culpabilidad por posesión de dicha sustancia controlada. Art. 404 de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404.

El 27 de mayo de 1988 el foro de instancia dictó una resolución al amparo del Art. 404(b) de la Ley de Sustancias Controladas de Puerto Rico, 24 L.P.R.A. sec. 2404(b), concediéndole una probatoria por el término de dos (2) años sujeto a cumplir con once (11) condiciones.

El 26 de julio de 1989 se presentó una denuncia contra la peticionaria, su madre y su hijo, imputándoles poseer, en común acuerdo, la sustancia controlada conocida como cocaína con intención de distribuirla. Art. 401 de la Ley de Sustancias Controladas de Puerto Rico, *supra.*

A raíz de estos hechos y de la denuncia, el 3 de octubre de 1989 el Ministerio Público solicitó la revocación de la probatoria concedida a la peticionaria. Específicamente el Estado le imputó, *como única violación a las condiciones*, el haber cometido "un nuevo delito de Sustancias Controladas, el cu[a]l está señalado para Vista Preliminar para el día 24 de octubre de 1989". Petición de recurso extraordinario *certiorari* (hábeas corpus), *Exhibit* III. El 17 de octubre de 1989 la peticionaria se opuso a dicha solicitud de revocación y alegó que no existía relación alguna entre las sustancias controladas obtenidas en el allanamiento de su residencia y su persona.

El 26 de enero de 1990, estando pendiente la celebración de la vista preliminar del delito imputado, se celebró la vista sumaria inicial de revocación. En ésta el foro de instancia determinó causa probable para celebrar la vista final de revocación.

La vista final fue señalada para el 20 de abril de 1990. En dicho señalamiento el tribunal de instancia hizo constar *que para el mes de junio de 1990 la probando habría cumplido la probatoria.* La vista fue reseñalada para el 23 de abril de 1990. El abogado de la probando notificó a dicho foro que la vista preliminar sobre el delito imputado sería celebrada el 29 de mayo de 1990.

El 23 de abril de 1990 el foro de instancia determinó que "en vista de que la acusada está a punto de cumplir el

período establecido mediante la resolución del 27 de mayo de 1988 y que la conducta mencionada como motivo para la revocación está pendiente de vista preliminar, no se revocará la probatoria en este momento". Petición de recurso extraordinario *certiorari* (hábeas corpus), *Exhibit* IX.

El 29 de mayo de 1990 se celebró la vista preliminar del nuevo delito. Allí se determinó *no causa probable* para acusar a la peticionaria y se ordenó su exoneración de los cargos. *Esa determinación advino final y firme.*[1]

Ya para el *29 de mayo de 1990 había expirado el período de supervisión al que el foro de instancia había sometido a la peticionaria. Así las cosas, el oficial probatorio de la peticionaria, Sr. Domingo Reyes Martínez, presentó a la consideración del foro de instancia un informe solicitando el archivo del caso en el que se había impuesto la probatoria. Allí el oficial probatorio indicó que: "Doña Ramonita cumplió responsablemente con las citas a oficina [sic]. Su actitud hacia el proceso de supervisión ha sido positiva."* (Énfasis suplido.) Petición de recurso extraordinario *certiorari* (hábeas corpus), *Exhibit* XII.

Además, señaló que su informe de violación a las condiciones obedeció a la presentación de la denuncia por infracción a la Ley de Sustancias Controladas de Puerto Rico *que no pasó el cedazo de la vista preliminar.*

Dicho informe refleja, además, que la probando había cumplido con la condición de someterse a tratamiento en el Departamento de Servicios contra la Adicción (D.S.C.A.).

No empece que en dicho informe se solicitaba el sobreseimiento de los cargos y la exoneración de la probando, el *13 de julio de 1990, habiendo cumplido ya la peticionaria la probatoria*, el Ministerio Público solicitó la extensión del período probatorio de la peticionaria por un término de cinco (5) años. Adujo como razón para ello que la determi-

---

[1] El Ministerio Público no acudió en vista preliminar en alzada ni presentó nuevas denuncias por los hechos que dieron base a la denuncia y registro y allanamiento de la residencia de la peticionaria.

nación de no causa en la vista preliminar se debió a *"defectos en la Orden de Allanamiento"* y que en dicho allanamiento se había ocupado "gran cantidad de drogas y dinero procedente de la residencia" de la peticionaria. Petición de recurso extraordinario *certiorari* (hábeas corpus), *Exhibit* XIII.

El foro de instancia señaló una vista sobre la extensión de período probatorio para el 10 de agosto de 1990. La peticionaria no fue citada personalmente para dicha vista. *El alguacil señaló que había dejado la citación en el buzón de la residencia de la peticionaria.* El abogado de la peticionaria solicitó la suspensión de la vista por entender que la probando no había sido citada debidamente. El foro de instancia concedió la suspensión solicitada, *pero declaró con lugar la moción, extendiendo el período probatorio.* A tenor con este dictamen, *señaló el 2 de noviembre* como fecha para celebrar la vista final de revocación.

*El 2 de noviembre de 1990* la peticionaria solicitó el archivo de la causa y *alegó que había cumplido con el término impuesto en la probatoria y había sido exonerada de los cargos imputados en la vista preliminar del nuevo delito.* El técnico sociopenal, Sr. Domingo Reyes, testificó que había recibido información confidencial que vinculaba a la peticionaria con el trasiego de drogas. Ante esta nueva imputación la defensa solicitó la posposición del caso, pues desconocía esos hechos. Entonces, el Ministerio Público *notificó en sala* su intención de imputar un fundamento adicional para la solicitud de revocación: *que la convicta estaba ligada al trasiego de drogas.* El abogado de defensa expresó al tribunal de instancia que entendía que se le tenía que *notificar formalmente* de esta nueva imputación.

El foro de instancia suspendió la vista para el 9 de noviembre de 1990. El 5 de noviembre la defensa solicitó un tiempo razonable para prepararse. El foro de instancia celebró la vista el 9 de noviembre de 1990. Sólo compareció el Ministerio Público anunciando la inclusión de tres (3) tes-

tigos, a saber, los tres (3) testigos que fueron anunciados contra la peticionaria en el caso por el nuevo delito que dio base a la solicitud de revocación de la probatoria. Ese nuevo delito no prosperó en vista preliminar.

La inclusión de estos testigos, así como copia de la minuta de 9 de noviembre de 1990, le fue notificada a la peticionaria.

La vista final de revocación se celebró los días 16 de noviembre y 7 de diciembre de 1990. Durante ésta testificó el técnico sociopenal, señor Reyes, y el agente encubierto José D. Flores Villalongo.

Oída la prueba, el foro de instancia revocó la probatoria y procedió a dictar sentencia que le impuso a la peticionaria dos (2) años de presidio.

Inconforme, la peticionaria acudió ante nos en petición de hábeas corpus. Consideramos esa petición como de *certiorari*. En auxilio de nuestra jurisdicción y hasta tanto no dispusiéramos otra cosa, fijamos una fianza en apelación para que la peticionaria recuperase su libertad.

El Procurador General compareció.

## II

En *Martínez Torres v. Amaro Pérez*, 116 D.P.R. 717, 724–725 (1985), señalamos que "no puede privarse a una persona de su libertad absoluta o limitada sin cumplirse con los requisitos mínimos del debido proceso de ley que corresponden a este momento". Allí establecimos los requisitos procesales mínimos que, como cuestión del debido proceso de ley, se le tienen que garantizar a un probando antes de revocarle el beneficio de una sentencia suspendida.

En específico, y en lo aquí pertinente, señalamos que en la vista final se le debe garantizar al menos "(a) una *notificación escrita de las alegadas violaciones a la probatoria*;

(b) un examen de la prueba en su contra". (Énfasis suplido.) *Martínez Torres v. Amaro Pérez*, supra, pág. 726.

En cuanto a la notificación escrita de las alegadas violaciones señalamos *que debía ser previa a la celebración de la vista y con suficiente antelación como para prepararse adecuadamente para su defensa. Martínez Torres v. Amaro Pérez*, supra, págs. 728–729.

*En el casò de autos nunca se le notificó por escrito a la peticionaria de las alegadas violaciones a la probatoria que el Ministerio Público pretendía sustentar en la vista final de revocación.* Excepto cuando se le notificó por escrito la alegada comisión de un nuevo delito de sustancias controladas, la ambivalencia del Ministerio Público y del oficial sociopenal en precisar la conducta específica violatoria de las condiciones que se le pretendía imputar a la peticionaria, hacen parecer este caso una expedición de pesca de fundamentos para lograr la revocación de la probatoria que a ésta se le había concedido. No logramos comprender dicha conducta oficial.

En primer lugar, le imputan la comisión de un nuevo delito. Cuando ese caso no prospero en vista preliminar se le imputó haber incurrido en conducta antisocial al haberse ocupado gran cantidad de dinero y drogas en su residencia y su vinculación con el trasiego de drogas. En la vista de revocación final el oficial sociopenal testificó sobre la alegada reputación de la peticionaria —de traficante de drogas— en su comunidad; del auto nuevo que desde 1988 había comparado con dinero en efectivo; la construcción de una segunda planta a su casa durante la probatoria; su salida de la jurisdicción sin autorización del tribunal, y el alegado historial delictivo de la familia cercana de la peticionaria. Declaró, además, el agente encubierto que alegadamente observó la transacción de drogas que dio base a que un juez expidiera una orden de registro y allanamiento contra la casa de la peticionaria y la subsi-

guiente denuncia por alegada distribución de drogas en concierto y común acuerdo con su madre y su hijo.

*Definitivamente, aquí, no se le notificó a la peticionaria adecuada, concisa y claramente —por escrito— la alegada conducta violatoria de las condiciones de la probatoria. No bastaba con imputarle que había incurrido en conducta antisocial.*(²)

Pero además, en *Martínez Torres v. Amaro Pérez*, supra, señalamos que corresponde al Ministerio Público el peso de probar, por preponderancia de la prueba, que el probando ha incumplido con las condiciones impuestas. En dicha encomienda puede descansar en evidencia que ordinariamente no sería admisible en el pleito criminal ordinario. Pero debe existir base suficiente en la prueba para apoyar la determinación que revoca la probatoria y priva al probando del preciado interés libertario que, aunque limitado, le asiste.

Examinada la prueba de autos, concluimos que ésta no establece, por preponderancia de evidencia, las violaciones imputadas. En primer lugar, nos llama sobremanera la atención el hecho de que en este caso el oficial sociopenal había, *motu proprio*, solicitado el archivo y la exoneración de la peticionaria al momento de cumplirse el término de la probatoria. Allí expresó que la peticionaria había cumplido responsablemente con las citas y que su actitud ante el proceso de supervisión había sido positiva. No es hasta que el Ministerio Público solicita la extensión del período probatorio que el oficial probatorio realiza la investigación en la comunidad de la peticionaria y trae al tribunal nuevos hallazgos. Resulta más sorprendente que este oficial socio-penal no haya informado anteriormente al tribunal de instancia que la peticionaria salió de la jurisdicción sin autorización del tribunal, a pesar de que ella misma se lo informó. Tampoco trajo al tribunal la alegada información

---

(²) Confróntese con *Pueblo v. Moreu Merced*, 130 D.P.R. 702 (1992).

que vinculaba a la peticionaria con el trasiego de drogas mientras cumplía la probatoria.

Tan es así que la información sobre el auto y su adquisición la obtiene y trae a la atención del tribunal luego de que en una de sus visitas en agosto y octubre de 1990 (habiendo expirado ya el período de supervisión al que fue sometida la peticionaria) viera allí el carro e hiciera una investigación. Pero de tal investigación surge que ese auto fue adquirido a finales de 1988.

Finalmente, el Ministerio Público trae a declarar al agente que alegadamente vio la transacción de drogas que dio base al registro y allanamiento de la casa de la peticionaria y la posterior denuncia en contra de ésta. Esa denuncia fue desestimada al no encontrarse causa probable para acusar en la vista preliminar. *Pero ese testigo no declaró en dicha vista preliminar. El Ministerio Público no ha explicado la razón para ello ni por qué no se le debe aplicar la presunción dispuesta en la Regla 16(5) de Evidencia, 32 L.P.R.A. Ap. IV, en el sentido de que toda evidencia voluntariamente suprimida le resultaría adversa si se ofrece.*

Por otro lado, consideramos que si con dicha evidencia no se pudo probar, mediante una *scintilla* de prueba, que probablemente se cometió el delito imputado en aquella denuncia ni que la peticionaria probablemente lo cometió (*cf. Pueblo v. Rivera Alicea*, 125 D.P.R. 37 (1989)), mucho menos podrá, por sí sola, establecer las alegadas violaciones a la probatoria por preponderancia de la prueba.

En vista de que la peticionaria *ya había cumplido el término de la probatoria impuesta sin que se le haya notificado adecuadamente ninguna conducta constitutiva de violaciones a las condiciones de dicha probatoria, y de que la prueba en ese sentido no nos convence de que cumpla con el "quantum" de prueba requerido para ordenar la revocación de la probatoria así concedida, dictaríamos sentencia para ordenar el archivo y sobreseimiento del caso G-87-1347 y la exoneración de la peticionaria de dicho cargo.*

Por todo lo anterior, disiento.