

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: | 2010 TSPR 235 |
| Julio Berríos Jiménez | 180 DPR ____ |

Número del Caso: AB-2010-194

Fecha: 30 de diciembre de 2010

Oficina del Procurador General:

       Lcda. Minnie H. Rodríguez López

       Procuradora General Auxiliar

Abogado del Peticionario:

       Por derecho propio

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Julio Berríos Jiménez                    AB-2010-194

RESOLUCION

En San Juan, Puerto Rico a 30 de diciembre de 2010.

Al igual que todo ciudadano o ciudadana, las juezas y los jueces están obligados a cumplir con la ley, modelando la conducta ciudadana a la que aspira la sociedad democrática. Están obligados a cumplir con las obligaciones de la Rama Judicial y respetar y honrar la función judicial. Además, al asumir el cargo aceptan también ciertas restricciones a su conducta, tanto en el ejercicio de sus funciones propiamente judiciales, como en sus demás actividades, ya sean personales o profesionales. Estas limitaciones, si bien no les privan de los derechos que poseen como miembros de nuestra sociedad, representan sacrificios en su vida pública y privada que enaltecen la integridad e independencia de su ministerio y estimulan el respeto y la confianza en la judicatura. Igualmente, se comprometen a fomentar un trato respetuoso y cordial hacia sus pares, las funcionarias y los funcionarios de la Rama Judicial y los que comparecen en sala. También, mantienen el orden, decoro y dignidad del tribunal y la solemnidad de sus procedimientos. Preámbulo de los Cánones de Ética Judicial, 4 L.P.R.A. Ap. IV-B (Sup. 2010).

El Lcdo. Julio Berríos Jiménez presentó una Queja contra el Juez Municipal, Hon. Edwin Flores Sellés. Esta Queja fue archivada por la Directora Administrativa de los Tribunales, Hon. Sonia I. Vélez Colón. A su vez, esta determinación fue sostenida, en reconsideración, por la Directora Administrativa Auxiliar, Sra. Ada Burgos Archilla. Así las cosas, el licenciado Berríos Jiménez presentó una moción de reconsideración ante el Juez Presidente del Tribunal Supremo, Hon. Federico Hernández Denton. En esa moción, el licenciado Berríos Jiménez expresó:

> Si como se expone en la determinación de la Oficina de Administración de Tribunales, ya el Supremo y su Juez Presidente decidieron el caso contra el Juez flores [sic] antes de concluir los procedimientos [a]dministrativos entonces no nos queda más que dar por sometido el caso y esperar por la desestimación del Juez Presidente.
>
> ........
>
> Antes que esperar por lo que es obvio, lo que será una desestimación ya previamente decidida... preferimos desistir del presente caso y dar por aplicable la Doctrina del toallazo. Véase, *Moción de Reconsideración* presentada por el Lcdo. Julio Berrios Jiménez, dirigida al Juez Presidente.

A raíz de esto, el 16 de diciembre de 2008, el Juez Presidente, Hon. Federico Hernández Denton, refirió el asunto al Procurador General, por entender que se trataba de expresiones cínicas e irrespetuosas que parecían estar reñidas con el Canon 9 de Ética Profesional, 4 L.P.R.A. Ap. IX. De esta forma, la Procuradora General presentó un Informe en el que concluyó que tales expresiones "apuntan a una posible violación de dicho precepto ético".

Luego de haber examinado el Informe presentado por la Procuradora General, entendemos que las expresiones vertidas por el licenciado Berrios Jiménez son contrarias al Canon 9 de Ética Profesional, *supra*, que establece que todo abogado debe observar para con los tribunales una conducta caracterizada por el mayor respeto. Véase, *In re Crespo*, 147 D.P.R. 656 (1999).

Ahora bien, esta coyuntura nos obliga a hacer un pronunciamiento ulterior con relación al paralelismo que existe entre las expresiones que realizó el Lcdo. Berrios Jiménez y las expresiones que el Juez Presidente, Hon.

Federico Hernández Denton, hizo recientemente en un mensaje televisivo dirigido al Pueblo de Puerto Rico. Veamos.

**I**

El pasado viernes, 5 de noviembre de 2010, en un acto sin precedentes, el Juez Presidente, Hon. Federico Hernández Denton, emitió un mensaje televisivo dirigido al Pueblo de Puerto Rico en el que criticó la decisión tomada por la mayoría del Tribunal en la Resolución *In re: Solicitud para aumentar el número de jueces en el Tribunal Supremo*, res. el 5 de noviembre de 2010, 180 D.P.R. ___ (2010), 2010 T.S.P.R. 214 2010 J.T.S. ___ (en adelante Resolución). Entre los comentarios emitidos sobresalen: "Esta resolución se aprobó apresuradamente, sin estudio, análisis ni la deliberación del Pleno del Tribunal, por el escaso margen de 4 votos a favor y 3 en contra. O sea, por el margen de un solo voto"; "Es una determinación que afecta la debilitada credibilidad que tiene el país en sus instituciones; sobre todo, en una institución que el país ha querido mantener por encima de los vaivenes de la política partidista"; "...el aumento de jueces, en el contexto actual que vive el país, exacerba la politización que nuestro país repudia"; "Esta decisión apresurada...es errada y peligrosa, para nuestra Judicatura y para la democracia". Véase, *Mensaje del Juez Presidente del Tribunal Supremo de Puerto Rico sobre aumento de número  de jueces en el Tribunal Supremo*, en http://www.ramajudicial.pr/.

Para muchos, estas expresiones aparentan estar, de su faz, reñidas con los preceptos éticos que gobiernan la conducta de los jueces en nuestro país.

Como poco, el mero hecho de hacer una declaración pública explicando la razón de su actuación --de por qué votó como lo hizo en su disidencia-- es contrario al Canon 19 de Ética Judicial, 4 L.P.R.A. Ap. IV-B (Sup. 2010), que le prohíbe a los jueces y juezas hacer declaraciones públicas explicando la razón de sus actuaciones. Asimismo, cuando el Juez Presidente, Hon. Federico Hernández Denton, sugirió de forma infundada que la decisión mayoritaria afectaba la credibilidad del Tribunal Supremo por estar basada en consideraciones políticas, no solo le faltó el respeto a los jueces que constituyeron esa mayoría sino que, además, los desprestigió. Así, estuvo en contravención con lo establecido en el Canon 6 de Ética Judicial, 4 L.P.R.A. Ap. IV-B (Sup. 2010) (la conducta de los jueces y juezas tiene que estar enmarcada en el respeto mutuo sin que importen las diferencias en sus posiciones dentro del sistema judicial; no deben hacer críticas infundadas que tiendan a menospreciar el prestigio de sus compañeros jueces y juezas).

De igual manera, su crítica pública en contra de la mayoría que emitió la Resolución, no fue prudente, serena ni imparcial, como se esperaría de un Juez de este Tribunal, en particular del Juez Presidente. Haciendo abstracción de su conocido predicamento, "la dignidad del silencio", se lanzó a la palestra pública a criticar frontalmente una decisión de este Tribunal. Más grave aun, el contenido de su mensaje estuvo cargado de connotaciones político-partidistas que obnubilaron su imparcialidad, pues en más de una ocasión sugirió que mediaron razones de índole política al adoptar la Resolución. Tal proceder es lamentable y dista de lo que el Pueblo de Puerto Rico espera de sus jueces. Véase, el Canon 8 de Ética Judicial, 4 L.P.R.A. Ap. IV-B (Sup. 2010). Véase, además, el Canon 23 de Ética Judicial, 4 L.P.R.A. Ap. IV-B (Sup. 2010) que establece que "[l]as juezas y jueces se comportarán públicamente de manera que sus actuaciones no provoquen dudas sobre su capacidad para adjudicar imparcialmente las controversias judiciales, no deshonren el cargo judicial y no interfieran con el cabal desempeño de sus funciones judiciales".

> En esa misión, y en ausencia de modelo inspirador superior, el espíritu recto se fortalece en su intimidad por la dignidad del silencio, concepto eje de la ética judicial. El buen juez, pues, evita toda conducta que mine la confianza pública en la neutralidad del Poder Judicial. Sabe que la suspicacia es el elemento corrosivo más dañino y difícil de subsanar de la estabilidad, convivencia y paz social. Descubre a tiempo que la metamorfosis del abogado al jurista se produce y se consuma no solo con la opinión correcta en derecho o el discurso académico, sino engalanada en una ejemplar conducta de moral, neutralidad y dignidad judicial. *P.S.P., P.P.D., P.I.P. v. Romero Barceló*, 110 D.P.R. 248, 311 (1980)(Opinión concurrente y disidente del Juez Asociado Señor Negrón García). Véase además, *Santiago v. Superintendente de la Policía*, 112 D.P.R. 205, 222 (1982)(Voto de inhibición del Juez Asociado Señor Negrón García).

De hecho, el Juez Presidente, Hon. Federico Hernández Denton, en su lamentable exposición, fuera del estrado, criticó y puso en tela de juicio el proceso de toma de decisiones que siempre ha imperado en el Tribunal, al señalar que la Resolución fue emitida por una mayoría escasa de cuatro (4) a tres (3). Si hay alguien que conoce a la perfección la reglamentación interna y los procedimientos que históricamente se han observado en este Tribunal es el Juez Presidente. Como jurista sabe que no importa cuán grande o

pequeña sea la mayoría, ese es el criterio que prevalece y se tiene que honrar y respetar. Por lo tanto, confundir al Pueblo de Puerto Rico con expresiones como esas y cuestionar los mismos procesos que en el pasado él ha practicado y refrendado, como crítica a la decisión mayoritaria, no es cónsono con el Canon 6 de Ética Judicial, *supra*, ni con su deber de orientar a la comunidad. Véase, Art. 2.008 de la Ley Núm. 201 de agosto 22 de 2003, según enmendada, conocida como Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, 4 L.P.R.A. sec. 24i (Sup. 2010).

Indispensable es señalar, que según la Regla 5(b) de nuestro Reglamento, 4 L.P.R.A. Ap. XXI-A, las opiniones disidentes se emiten por escrito y se circulan específicamente a todos los jueces de este Tribunal. No se emiten posteriormente, en video, por televisión o por el internet, tal y como lo hizo el Juez Presidente en su mensaje televisivo. Nos parece, que al apartarse del proceso reglamentario, la divulgación intimada del mensaje del Juez Presidente, Hon. Federico Hernández Denton, en los medios, incluyendo las páginas cibernéticas de la Rama Judicial, constituye un uso indebido de fondos públicos.

## II

Por otro lado, nos vemos en la obligación de atender algunas de las manifestaciones que hizo el Juez Presidente, Hon. Federico Hernández Denton, en su voto disidente a la Resolución, por su efecto sobre la imagen del Tribunal. En lo pertinente mencionó que:

> [p]odríamos entender que los nuevos Jueces se sientan abrumados por no estar acostumbrados al tipo de labor que genera un tribunal de última instancia al que recién se incorporan. Eso nos ha pasado a todos los que hemos ocupado esta posición durante los primeros años de nuestra incumbencia...Con el mayor respeto a los recién llegados compañeros de esta Curia, el llamado, sin embargo, es a ser laboriosos, no a pretender ser eximidos de los rigores del trabajo judicial. Véase, Voto Disidente del Juez Presidente Señor Hernández Denton, *In re Solicitud para aumentar el número de Jueces en el Tribunal Supremo*, *supra*.

Estas expresiones ponen en entredicho el compromiso y la seriedad con la cual los jueces de reciente nombramiento han asumido la responsabilidad del ministerio de impartir justicia desde el máximo foro judicial del país. El llamado que hace el Juez Presidente, Hon. Federico Hernández Denton,

aparte de no atacar los fundamentos jurídicos de la Resolución, es inconsistente con la verdad. Así lo revelan el número de casos despachados por los miembros de este Tribunal durante sus primeros diecinueve (19) meses.

Las expresiones deben ser documentadas. Por consiguiente, si examinamos los datos específicos encontraremos lo siguiente: la Jueza Asociada Señora Pabón Charneco ha emitido diecinueve (19) opiniones durante ese periodo.[1] Opiniones disponibles en http://www.ramajudicial.pr/. Mientras tanto, el Juez Asociado Señor Martínez Torres y el Juez Asociado Señor Kolthoff Caraballo han emitido dieciséis (16) y diecisiete (17) opiniones, respectivamente, durante el mismo periodo. *Íd.*[2] Por su parte, el Juez Presidente produjo un total de dieciséis (16) opiniones durante sus primeros diecinueve (19) meses en este Tribunal. Véanse, Tomos 116-118 de D.P.R. El testimonio del trabajo realizado habla por sí solo.

Estos datos demuestran que los recién nombrados jueces han sido tan o más productivos como lo fue el Juez Presidente durante sus primeros meses de incumbencia. Por lo tanto, se aparta de la verdad quien enuncie que no han laborado con ahínco y tesón durante el periodo de su incumbencia en este Foro. Ninguno de los cuatro (4) jueces de reciente nombramiento ha pretendido ser eximido de los rigores del trabajo judicial. No se debe olvidar que antes de llegar al Tribunal Supremo, habían laborado como jueces en otras instancias. Por ende, la carrera judicial les ha permitido estar expuestos al rigor del trabajo judicial en múltiples escenarios.

Todos han asumido su responsabilidad con dedicación y esfuerzo. Así lo demuestran los datos estadísticos presentados. Siempre han tenido como norte dispensar justicia de forma eficiente y con la agilidad que nuestro Pueblo requiere y espera. No buscan privilegios, trato especial ni trabajar menos. Por eso, cualquier imputación en contrario es una infundada.

### III

Lo anterior no responde a un mero acto de erudición. La honestidad de intelecto y la convicción por honrar la toga también han sido elementos indispensables que han coadyuvado

---

[1] Este número no incluye las sentencias, *per curiams*, opiniones disidentes y opiniones concurrentes preparadas y certificadas.

[2] Imprescindible es resaltar que el Juez Asociado Señor Rivera García para el 31 de octubre de 2010 había circulado nueve (9) Sentencias. Sin duda, esto es sinónimo de laboriosidad y compromiso con su trabajo.

a construir la apreciación proyectada con relación a las actuaciones del Juez Presidente, Hon. Federico Hernández Denton. No dudamos en que habrá quienes pretendan excusar su conducta o quienes prefieran interpretar de forma más laxa los preceptos éticos implicados, para liberarlo de este análisis. Después de todo, el "papel aguanta todo". Empero, tenemos el convencimiento de que esta cavilación no es errada.

El caso de autos abre la puerta de una contradicción que hoy se nos hace difícil cerrar. Por un lado, estamos prestos a sancionar al licenciado Berrios Jiménez por conculcar los principios deontológicos que rigen la profesión legal, al hacer expresiones indebidas que aluden a un miembro de este Tribunal. Por otro lado, el Juez Presidente, Hon. Federico Hernández Denton deslegitima el poder inherente y la autoridad moral que tiene el Tribunal para disciplinar a los abogados, abogadas, jueces y juezas del país, mediante expresiones públicas que magullan la integridad y la imagen de este Tribunal y de sus miembros.

Tristemente, cuando esto ocurre y el ejemplo no empieza por la casa, el mensaje que se le envía a la clase togada y al Pueblo en general es nefasto. Supone una invitación para que los abogados, abogadas, jueces y juezas que enfrentan procesos disciplinarios por actuaciones similares a la desplegada por el Juez Presidente, Hon. Federico Hernández Denton, esbocen como apología que "si los jueces del Supremo lo hacen, ellos también lo pueden hacer". Ahí radica el irremisible intersticio que provocó la actuación del Juez Presidente a los cimientos fundamentales de nuestra autoridad inherente para disciplinar a los juristas en Puerto Rico. ¿Con qué molde vamos a ejercer nuestra facultad disciplinaria contra la clase togada si los propios miembros de este Tribunal soslayan los preceptos éticos de la profesión legal o judicial?

Resulta un tanto irónico y aún más contradictorio, que el Juez Presidente haya criticado la Resolución por entender que afectó la debilitada credibilidad que tenía el País en sus instituciones, refiriéndose al Tribunal Supremo. No se percató, penosamente, de que su actuación trastocó la credibilidad y legitimación de este Foro al momento de disciplinar a los miembros de la profesión legal y de la judicatura en Puerto Rico. Es lúgubre que nuestra autoridad para sancionar y disciplinar a los abogados, abogadas, jueces y juezas en Puerto Rico, pueda ser cuestionada por una actuación desproporcionada de uno de los miembros de este Tribunal. En otras palabras, fueron las expresiones públicas que realizó el Juez Presidente, al trastocar nuestro poder

inherente para regular la profesión legal y judicial, las que afectaron institucionalmente al Poder Judicial.

Como bien señalamos en *In re Hernández Torres*, 167 D.P.R. 823, 848-849 (2006), citando a distintas autoridades:

> El juez, como tal, es el árbitro designado por la sociedad, a través del Estado, para juzgar la conducta humana. Para poder merecer el respeto de la sociedad y el acatamiento de sus decisiones, ha de ser, y ser visto, como un ser humano sin tacha. Ello exige, no solamente ser bueno, sino también parecerlo. C.J. Irizarry Yunqué, *La Ética Judicial*, Año 9 (Núms. 1-4) Forum 4 (octubre 1993).

> El juez tiene que ser previsor y analizar las posibles consecuencias de sus actos en términos de las impresiones que podrían recibir terceras personas. Torres Torres, [*Cánones de Ética Judicial en Puerto Rico, Comentarios*, FORUM 1-4, octubre 1993, pág. 16]. Además, debe siempre estar muy pendiente de situaciones que puedan afectar negativamente su imagen y poner en duda su sano e independiente criterio judicial. L.M. Negrón Portillo, *Ética y disciplina judicial en Puerto Rico*, 1987, pág. 131. Véase además, *In re Ortiz Rivera*, 163 D.P.R. 530, 536 (2004).

## IV

Todo lo anterior hace tentador el que se disponga del caso de autos con un mero archivo de la Queja. No obstante, nuestra definición de proceder digno y los valores inculcados no nos permiten seguir ese derrotero. Permitir que los abogados le falten el respeto a los miembros de este Tribunal, en especial al Juez Presidente, Hon. Federico Hernández Denton, mediante imputaciones infundadas, es indigno. Tal actuación no puede quedar impune. Por el bienestar de la profesión legal de la abogacía, de la judicatura, de las partes inmersas en los procesos legales y judiciales, así como de la ciudadanía en general, los principios axiológicos que predica nuestro ordenamiento jurídico deben ser observados por encima de cualquier descarrío. Esto tiene que ser así a pesar del contrasentido ocasionado recientemente por la figura constitucional emblemática del Poder Judicial: el Juez Presidente.[3]

---

[3] El Juez Presidente es quien dirige la administración de los tribunales; es responsable del funcionamiento eficiente de los tribunales; y está encargado de promover la responsabilidad de los jueces en la ejecución de

Distinto a como piensa la Jueza Asociada Señora Fiol Matta en su Opinión disidente, entendemos que siempre tenemos jurisdicción para vindicar la autoridad de este Tribunal por la vía judicial. Lo crucial es que se haga a través de los canales legítimos reconocidos por nuestra Institución, como lo es una Resolución del Tribunal.

Tampoco coincidimos con la Jueza Asociada cuando afirma que "este Tribunal no está facultado para juzgar la conducta de uno de sus miembros". Opinión disidente de la Jueza Asociada Señora Fiol Matta, pág. 5. Curiosamente, para llegar a esa conclusión, la disidencia cita los Votos de Inhibición del Juez Asociado Negrón García y del Juez Asociado Rebollo López. Sin embargo, lo que no indica es que en ese caso, el Tribunal pasó juicio sobre las consecuencias de las expresiones públicas de los Jueces disidentes. Véase, *In re Solicitud Cepeda García*, 130 D.P.R. 18 (1992). Es decir, aunque por supuesto, no podemos imponer sanciones disciplinarias a ninguno de los integrantes de este Foro, sí tenemos la autoridad para defender la integridad del Tribunal ante la conducta de alguno de sus miembros que infrinja los Cánones de Ética Judicial.

Por otro lado, contrario a lo que expresa la Juez Asociada señora Rodríguez Rodríguez, no hay nada siniestro ni irregular en el trámite seguido para la aprobación de esta Resolución. Eso no es "nuevo". En muchas ocasiones una opinión o voto individual de un juez o jueza se convierte en la opinión o resolución del tribunal. Como toda resolución, es una expresión del Tribunal, producto del proceso de colegiación que el Voto Disidente parece ignorar. Por eso, la única intolerancia que ha habido aquí es la que se critica en esta Resolución.

Aclaramos que esta Resolución no tiene la pretensión de censurar el derecho que tiene el Juez Presidente y todos los demás Jueces y Juezas Asociados/as de emitir opiniones o votos disidentes cuando lo entiendan necesario. Véase Regla 5 del Tribunal Supremo, 4 L.P.R.A. Ap. XXI-A. Siempre defenderemos con fervor esa facultad pero haremos todos los señalamientos que correspondan cuando la disidencia se utilice como diatriba hacia los miembros de este Tribunal.

En fin, luego de haber examinado el expediente, incluyendo la moción reaccionando al Informe de la

---

sus obligaciones judiciales, entre otras cosas. Art. V, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2002; Art. 2.012 de la Ley Núm. 201 de agosto 22 de 2003, según enmendada, conocida como Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, 4 L.P.R.A. sec. 24j (Sup. 2010).

Procuradora presentada por el licenciado Berríos Jímenez, en la que éste reitera la ausencia de intención de su parte, resolvemos amonestar al licenciado Berríos Jiménez por sus expresiones en los escritos que sometió en el procedimiento contra el Hon. Edwin Flores Sellés, con un apercibimiento para que en adelante no vuelva a emitir expresiones que se ubiquen al margen de los Cánones de Ética Profesional. Se ordena el archivo de la presente Queja.

     Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo.  La Jueza Asociada señora Fiol Matta emite Voto Particular Disidente al que se une la Juez Asociada señora Rodríguez Rodríguez, la cual a su vez, emite Voto Particular Disidente.  El Juez Presidente señor Hernández Denton emite Voto de Inhibición.


                         Aida Ileana Oquendo Gralau
                         Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Julio Berríos Jiménez                    AB-2010-194        Queja

Voto de Inhibición emitido por el Juez Presidente SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 30 de diciembre de 2010.

El presente caso requería que este Tribunal evaluara si ciertas expresiones del licenciado Julio Berríos Jiménez --**dirigidas a un integrante de este Foro** en el contexto de un **proceso formal administrativo**, en el que dicho abogado **figuraba como parte quejosa**-- eran irrespetuosas y, consecuentemente, violatorias de los Cánones de Ética Profesional de Puerto Rico. De esta manera, la única controversia en la que este Tribunal tiene jurisdicción en este caso versa sobre la conformidad de esas expresiones con los deberes éticos aplicables y su jurisprudencia interpretativa. Canon 9 del Código de Ética

Profesional de Puerto Rico de 1970, 4 L.P.R.A. Ap. IX, C. 9; *véanse*, In re, Markus, 158 D.P.R. 881 (2003); In re, Crespo Enríquez, 147 D.P.R. 656 (1999). Nos hemos inhibido de la consideración de esta controversia por la única razón de que el proceso disciplinario contra el Lic. Julio Berríos Jiménez inició a instancias de un referido nuestro al Procurador General.

Ahora bien, introducir en el proceso disciplinario que nos ocupa referencias a las expresiones del suscribiente emitidas a raíz de la aprobación de la Resolución In re: Solicitud para aumentar el número de jueces en el Tribunal Supremo, res. el 5 de noviembre del 2010, 2010 T.S.P.R. 214, tal y como lo hace la Resolución del Tribunal en el presente caso constituye un intento de equiparar ambos contextos por el sólo hecho de que los dos escenarios involucran "expresiones". La diferencia de contextos es evidente. La intención de equipararlos con señalamientos a destiempo, inapropiados, carentes de toda pertinencia e injustamente ambivalentes es particularmente cuestionable, sobre todo cuando se pasa juicio sobre un asunto en el que este Tribunal no tiene ninguna jurisdicción. *Véase* In re: Solicitud Cepeda García 130 D.P.R. 18 (1992).

Primero, nuestras expresiones del pasado viernes 5 de noviembre del 2010 se realizaron en el contexto de un asunto de la mayor envergadura para el Poder Judicial de Puerto Rico y para nuestro sistema republicano de gobierno. **Fueron hechas en mi carácter de Juez Presidente del**

**Tribunal Supremo y como tal, en mi carácter de administrador del Poder Judicial de Puerto Rico, rol que en el pasado nunca ha sido impedimento para que quien lo ostente haga expresiones públicas sobre asuntos que afectan institucionalmente al Poder Judicial.**[4]    Tan importantes son

---

[4]El texto completo de las declaraciones que emitimos ese día es el siguiente:

Querido Pueblo de Puerto Rico:

En el día de hoy, cuatro jueces del Tribunal Supremo de Puerto Rico, aprobaron una Resolución en la que se le solicita a la Asamblea Legislativa que aumente el número de jueces que componen este tribunal de 7 a 9 miembros.

Esta resolución se aprobó apresuradamente, sin estudio, análisis ni la deliberación del Pleno del Tribunal, por el escaso margen de 4 votos a favor y 3 en contra. O sea, por el margen de un solo voto.

Muchos de ustedes; jueces, abogados y ciudadanos en general, se cuestionan la sabiduría de esta decisión.

Como Juez Presidente y Administrador de la Rama Judicial, me dirijo a ustedes con el convencimiento de que esta decisión no le pertenece exclusivamente a cuatro jueces del Tribunal Supremo. Es una decisión que le pertenece al pueblo de Puerto Rico-- le pertenece a ustedes que me escuchan. Por eso les habló directamente en el día de hoy.

La propuesta que le presentan hoy al país, NO es necesaria.

Esta propuesta, lacera la integridad del Tribunal Supremo; la institución que fue creada constitucionalmente para garantizar la confianza de todos los ciudadanos y ciudadanas en su sistema judicial. Es una determinación que afecta la debilitada credibilidad que tiene el país en sus instituciones; sobre todo, en una institución que el país ha querido mantener por encima de los vaivenes de la política partidista.

los asuntos que versan sobre el Poder Judicial, su independencia y su fortalecimiento, que en el ordenamiento ético-disciplinario hemos reconocido que aun cuando los jueces deben evitar intervenir en controversias públicas, pueden expresarse públicamente para defender la independencia del Poder Judicial, aun cuando tales expresiones pudieran generar debate o incluso pudieran tener alguna tangencia con el debate político. In re: Solicitud Cepeda García, supra, pág. 28. Nuestras expresiones fueron motivadas por la convicción de que una medida como la aprobada suponía una concienzuda discusión

---

Es importante destacar que ustedes ya se expresaron sobre este asunto en un Referéndum celebrado en 1994 y rechazaron abrumadoramente el aumento en el número de jueces del Tribunal Supremo. Esto demuestra que ésta es una propuesta que no cuenta con el apoyo del Pueblo de Puerto Rico. Además, el aumento de jueces, en el contexto actual que vive el país, exacerba la politización que nuestro pueblo repudia.

Esta decisión apresurada, que no ha tenido el beneficio de una discusión ponderada entre todos los que integramos el Tribunal Supremo, es errada y peligrosa, para nuestra Judicatura y para la democracia.

Con estas expresiones, dejo establecida mi posición, y paso la página, ante este triste episodio en la historia de esta centenaria Institución. Sepa el Pueblo de Puerto Rico que independientemente de cuál sea el desenlace de este proceso, yo, como Juez Presidente del Tribunal Supremo, y como Administrador de la Rama Judicial, continuaré trabajando incansablemente por la búsqueda de la verdad y de la justicia.

MUCHAS GRACIAS

Es menester señalar que la transmisión de este mensaje por los diferentes medios no conllevó la erogación de fondos públicos.

al interior del Tribunal y que los fundamentos esbozados por la mayoría no estaban ni están apoyados por prueba empírica alguna.

Segundo, a tenor con lo anterior, afirmar que nuestras expresiones del pasado 5 de noviembre del 2010 podrían afectar la imagen de imparcialidad de quien suscribe parte de una visión errada de lo que significa e implica dicho principio. Al margen de que, como antes se afirmó, nuestras expresiones fueron realizadas en el ejercicio de nuestras prerrogativas como administrador del Poder Judicial de Puerto Rico, el principio de imparcialidad tiene su más excelsa vitalidad en el contexto de procesos adversativos o, más bien, en el contexto de casos y controversias presentados ante los tribunales por parte de personas que solicitan la intervención judicial. Por su propia naturaleza, la solicitud de aumento de Jueces Asociados del Tribunal Supremo, que sepamos, no fue una solicitud formulada por ninguna otra persona que no sea por la mayoría de este Tribunal. Se trató de un asunto extraordinario que trascendió los asuntos típicos de carácter adversativo que se presentan en este tribunal en los que el principio de imparcialidad restringe la capacidad de los jueces de expresarse públicamente de manera que su imparcialidad, esto es, la razonable equidistancia que deben mantener frente a las partes en un litigio, no pueda ser cuestionada.

En esa controversia voté como "uno entre pares" y, como administrador del Poder Judicial, expuse las

preocupaciones institucionales que legítimamente tenía y tengo a la luz de la evidencia empírica --al presente no refutada-- que rechaza los argumentos usados por la mayoría para apoyar la ampliación de Jueces Asociados del Tribunal y para plantear la necesidad de variar las normas operacionales de este Foro.

Tercero, tratándose de declaraciones realizadas fuera de un escenario litigioso y más bien en el contexto del uso del mecanismo constitucional extraordinario que prevé el Artículo V, Sección 3 de nuestra Constitución, son expresiones consecuentes con las responsabilidades del cargo que ostento y con el deber ineludible que todo juez tiene de defender la independencia del Poder Judicial, Canon 2 de Ética Judicial, 4 L.P.R.A. Ap. IV-B, C. 2 (Supl. 2010). Dicho mecanismo constitucional otorga al Tribunal la facultad de iniciar un proceso legislativo que históricamente ha sido un asunto de gran interés e importancia para la administración de la justicia y para la legitimidad y confianza de la ciudadanía en las decisiones de este Tribunal.

Cuarto y último, nunca emitimos un juicio sobre el compromiso de quienes constituyeron la mayoría de este Tribunal en la Resolución del 5 de noviembre del 2010. Tampoco imputamos o sugerimos a los Jueces Asociados que conformaron la mayoría, como afirma la compañera Jueza Asociada Pabón Charneco, haber actuado por consideraciones políticas. Sólo destacamos los datos objetivos: la evidencia empírica conduce a la conclusión de que un

aumento en el número de Jueces Asociados de este Tribunal no estaba ni está justificada, y que fueron los jueces de más reciente nombramiento en este Tribunal quienes, por razón de la carga de trabajo, solicitaron el aumento, cuando por más de tres décadas no se había formulado tal solicitud, incluso en escenarios en los que existían vacantes y una carga de trabajo mayor.

Antes invocamos la dignidad del silencio cuando, sin proponérnoslo, en el año 2003 nos vimos involucrados en una controversia pública sobre quién sería designado Juez Presidente de este Tribunal por parte de quien tenía la facultad constitucional de hacer esa designación. Se trató de un escenario en donde era necesario brindar total deferencia a los Poderes Ejecutivo y Legislativo y en el que expresarnos nada contribuía a la defensa de la independencia e integridad del Poder Judicial. Los derroteros nos enfrentaron a análogas situaciones en las que fuimos fieles a dicho principio.

**Sin embargo, cuando en un contexto no litigioso se toma una determinación por parte del Tribunal del cual formo parte y presido que entendemos que lacera su independencia real y aparente, por ser contraria a los datos objetivos disponibles y lesiva a la ecuanimidad y prudencia que deben servir de fundamento a sus decisiones en temas tan vitales como su composición y funcionamiento, el silencio no es digno. Callar, en ese contexto, no hace honor a la toga que llevo hace más de veinticinco (25) años; ese símbolo de la verdad, de la justicia y de la honestidad**

intelectual. Hoy, "más que al juicio pasajero contemporáneo, nos sometemos a la sentencia inapelable que dictará la Historia". <u>In re Solicitud Cepeda García</u>, *supra*, pág. 32 (Voto de Inhibición del Juez Asociado Negrón García).

Federico Hernández Denton<br>
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*


Julio Berríos Jiménez                    AB-2010-194


Voto particular disidente emitido por la Jueza Asociada señora FIOL MATTA al cual se une la Juez Asociada señora Rodríguez Rodríguez

En San Juan, Puerto Rico, a 30 de diciembre de 2010.

Luego de haber examinado detenidamente el caso que está ante nuestra consideración, que es, estrictamente, el que se refiere a las expresiones del licenciado Julio Berríos Jiménez, entiendo que procede archivar la queja disciplinaria presentada contra este abogado.

Sin embargo, no puedo avalar con mi voto el ejercicio altamente reprochable que ha llevado a cabo una mayoría de este Tribunal al aprovechar el caso del licenciado Berríos Jiménez para expresarse sobre una situación que no está planteada ante nosotros y que no es pertinente para la resolución de la queja.

Se ha tomado el comentario del licenciado Berríos Jiménez como pie forzado para redactar una resolución, que por ser de archivo normalmente no se publicaría, en la cual se opina sobre la corrección del acto del Juez Presidente del Tribunal Supremo al emitir un mensaje televisivo sobre los efectos que tendría en el funcionamiento de la Rama Judicial que él dirige el añadir dos jueces asociados a nuestro Tribunal. Con ello, han pretendido convertir el caso *In re* Julio Berríos Jiménez en la Resolución *In re* Federico Hernández Denton.

No es cierto que lo expresado por el licenciado Berríos Jiménez *obliga* a este Tribunal a pronunciarse sobre el supuesto paralelismo entre la conducta del abogado y la del Juez Presidente.[5] ¿Por qué, entonces, la mayoría secuestra esta resolución para exponer su parecer sobre un tema que no se le ha planteado? La realidad es que han aprovechado el foro judicial para contestar expresiones públicas del Juez Presidente con las cuales no están de acuerdo. En la medida en que entiendan que, con éstas, el Juez Presidente "no sólo le[s] faltó el respeto

---

[5] El licenciado Berríos Jiménez escribió en una moción que el Juez Hernández Denton ya había resuelto su queja contra un juez municipal utilizando la "doctrina del toallazo". *Véase In re* Julio Berríos Jiménez, Resolución mayoritaria, 30 de diciembre de 2010, págs. 2-3.

. . . sino que, además, los desprestigió",[6] pueden tener

derecho a contestar, *pero no por la vía judicial.*

A lo que estamos obligados y obligadas es a abstenernos de hacer pronunciamientos acerca de aquello que no debemos considerar en una acción judicial. Así lo hemos declarado en múltiples ocasiones[7] y nos hemos distanciado reiteradamente del enfoque equivocado de dilucidar elementos de situaciones que no están pendientes ante los tribunales en camino a resolver los asuntos que realmente se nos han expuesto.[8] El Juez asociado Rebollo López, por

---

[6] *Id.* a la pág. 3.

[7] Nos hemos negado a intervenir cuando se nos ha presentado la posibilidad de resolver asuntos sin que se haya sometido suficiente prueba (Blas Toledo v. Hospital Nuestra Señora de la Guadalupe, 146 D.P.R. 267, 319-320 (1998)), cuestiones de Derecho que no surgen de los recursos (Álvareztorre Muñiz v. Sorani Jiménez, 2009 T.S.P.R. 12, pág. 3 n. 2.; Pueblo v. Martínez Torres, 126 D.P.R. 561, 573 n. 4 (1990); Pueblo v. Rivero Diodonet, 121 D.P.R. 454, 467 n. 4 (1988)) y controversias que podrían desprenderse de los mismos hechos pero que no son las controversias del caso (Orsini García v. Méndez, 2009 T.S.P.R. 190, pág. 42 n. 94; Estrella, Monge v. Figueroa Guerra, 170 D.P.R. 644, 676 (2007)). También hemos sabido prescindir de hechos que son impertinentes para resolver un caso (Iglesia Católica v. Monclova, 36 D.P.R. 806, 808 (1927)), de hechos de casos distintos que están pendientes ante otros tribunales, aunque estén relacionados con el que atendemos (Moreno Orama y otro v. De la Torre, 2010 T.S.P.R. 70, pág. 9) y de controversias públicas en las que el Tribunal no ha intervenido y que no ha utilizado como fundamento en su razonamiento (Nogueras Cartagena v. Rexach Benítez, 141 D.P.R. 610, 622-623 (1996)). Asimismo, hemos establecido que procesos y casos distintos no son susceptibles de adjudicarse en uno solo (Pueblo v. Nieves Massa, 133 D.P.R. 28, 33 (1993)).

[8] Fed. Pescadores Playa Picúas v. U.S. Industries, Inc., 135 D.P.R. 303, 338-340 (1994) (Opinión concurrente y disidente de la Jueza Naveira). De forma similar, hemos criticado que

ejemplo, dijo lo siguiente sobre la práctica de ir más lejos de los límites de lo planteado para juzgar controversias que no están ante la consideración del Tribunal: "Ello es una práctica, repetimos, en que este Tribunal nunca debe incurrir. Cabe preguntarse: ¿qué diferencia existe entre esta práctica y la emisión de una opinión consultiva?".[9]

Sabemos que para ejercer válidamente el poder judicial se requiere un caso o controversia real.[10] Nuestros tribunales sólo pueden ejercer su jurisdicción ante polémicas genuinas cuya resolución afecte los intereses de las partes que acuden a las cortes mediante el sistema de derecho rogado.[11] Por esto, es indispensable que el asunto que se atienda sea concreto y definido.[12] Asirse de un caso para presentar y "resolver" otro distinto es, en términos prácticos, lo mismo que actuar sin jurisdicción.

---

se aproveche un caso para incorporar innecesariamente una doctrina a nuestro ordenamiento. Pueblo v. Narváez Cruz, 121 D.P.R. 429, 454 (1988) (Opinión concurrente y disidente del Juez Hernández Denton).

[9] Asoc. de Residentes Parque Montebello v. Montebello Development Corp., 138 D.P.R. 412, 429 (1995) (Opinión concurrente y disidente del Juez Rebollo López).

[10] Comisión de la Mujer v. Secretario de Justicia, 109 D.P.R. 715, 720 (1980).

[11] Asociación de Alcaldes v. El Contralor, 2009 T.S.P.R. 102, págs. 6-7; S.L.G. Lloréns v. Secretario de Justicia, 152 D.P.R. 2, 8 (2000).

[12] Noriega v. Hernández Colón, 135 D.P.R. 406, 421 (1994).

En esta situación extraña en la cual se ha colocado la mayoría -y, como consecuencia, ha colocado al Tribunal- no sólo no hay jurisdicción porque se ha traído por los cabellos un asunto que no está en controversia, sino porque este Tribunal no está facultado para juzgar la conducta de uno de sus miembros.[13] Constitucionalmente, no nos corresponde evaluar las actuaciones de nuestros pares.[14]

Los tribunales ejercen su discreción en cuanto al límite de sus poderes para determinar si es apropiado atender determinado caso, según la doctrina de justiciabilidad.[15] De la misma manera, los jueces y las juezas tenemos que utilizar prudentemente nuestra discreción para analizar si es adecuado incluir determinadas expresiones en la disposición de un caso.[16]

---

[13] *In re* Solicitud Cepeda García, 130 D.P.R. 18 (1992) (*Per Curiam*). El Juez asociado Negrón García, respecto a esta sentencia para archivar *por falta de jurisdicción*, se preguntó "bajo qué facultad constitucional han actuado cuatro (4) miembros individuales de este Foro para configurarla con carácter institucional. La premisa implícita, ¿ha sido considerarnos *partes*, sus *pares* o ambas cosas? ¿Quién custodia a los custodios?". *Id.* a la pág. 32 (Voto de inhibición del Juez Negrón García). Asimismo, el Juez asociado Rebollo López calificó de hecho incuestionable "que este Tribunal no tiene jurisdicción, ni autoridad en ley de clase alguna, para enjuiciar, amonestar o exonerar a uno de sus miembros". *Id.* a la pág. 37 (Voto particular de inhibición del Juez Rebollo López).

[14] Artículo V, secciones 8 y 11, Const. P.R.

[15] Suárez Cáceres v. Comisión Estatal de Elecciones, 2009 T.S.P.R. 97, pág. 32.

[16] "No escogemos los asuntos que van a ser objeto de nuestra consideración. Es en el momento que éstos surgen que decidimos cuál será el contenido de nuestras expresiones y

La discreción, como señala Dworkin, consiste en un área abierta rodeada por restricciones.[17] Por tanto, no podemos ampararnos en ella para operar sin límites. Obrar de tal forma pondría en tela de juicio los principios de imparcialidad y objetividad que nos rigen. No honramos la toga pensando que "el papel aguanta todo".[18] En consecuencia, no habré de entrar en los méritos de la inexistente "controversia" sobre el Juez Presidente que se ha fraguado en la Resolución mayoritaria, pues hacerlo equivaldría a llevar a cabo un acto tan extrajurisdiccional como el que estoy repudiando.

Las decisiones se escriben para resolver disputas. No pueden ser un discurso sin tangencia con los puntos importantes del pleito, pues esto descarrila el camino al resultado que se propone. Los receptores de la opinión, entonces, desarrollan múltiples interpretaciones sobre la pertinencia de los fundamentos y quedan desorientados en lugar de guiados.[19] No debemos olvidar que nuestra función cardinal es orientar el derecho y tenemos que exigirnos la

---

la ocasión apropiada, dentro del desempeño de las funciones de nuestro cargo, para efectuar las mismas". *In re Solicitud Cepeda García*, 130 D.P.R. 18, 38-39 (1992) (Voto particular de inhibición del Juez Rebollo López).

[17] Ronald Dworkin, Taking Rights Seriously, Harvard University Press, 1978, pág. 31.

[18] *Véase In re* Julio Berríos Jiménez, Resolución mayoritaria, 30 de diciembre de 2010, pág. 7.

[19] J. Levin, How Judges Reason. The Logic of Adjudication, New York, Peter Lang Publishing, 1992, págs. 135-143.

mayor reflexión y objetividad en el cumplimiento de esa tarea.[20]

El método utilizado en el presente caso para atender dentro de éste un asunto impertinente al mismo es aun más preocupante si consideramos que lo está llevando a cabo el Tribunal Supremo, el foro judicial de mayor jerarquía del país, que tiene el deber de servir como guía para los demás tribunales, dando el mejor ejemplo con sus acciones y su prudencia. No se cumple esta obligación cuando los propios jueces y juezas que deben resolver el caso escogen los asuntos sobre los cuales se habrán de expresar. El Tribunal no puede convertirse en un consejo supremo que juzgue cualquier acto que le llame la atención o que opine sobre lo que acontezca en la vida en comunidad.[21] Es nuestra obligación concentrarnos en los casos que estamos llamados y llamadas a resolver dentro del marco de una acción judicial.

Un supuesto paralelismo no es suficiente para entender sobre materias que no nos atañen. Paralelo es aquello que transcurre de forma equidistante a algo, pero que, por más que se prolongue, nunca logra encontrarlo; por definición, las líneas paralelas nunca tienen puntos en común. La similitud que miembros de este foro dicen encontrar entre

---

[20] _El Imparcial Inc. v. Brotherhood_, 82 D.P.R. 164, 216 (1961) (Opinión disidente del Juez Serrano Geyls).

[21] _Véase_ E.L.A. v. Aguayo, 80 D.P.R. 552, 599-601 (1958).

el caso de conducta profesional que verdaderamente se encuentra ante nosotros y las manifestaciones del Juez Presidente no es razón para expandir las líneas que demarcan los límites de nuestras facultades hasta conseguir que se unan artificialmente en una misma resolución.


Liana Fiol Matta
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re

                                        AB-2010-194
Julio Berríos Jiménez



Voto particular disidente emitido por la Juez Asociada señora Rodríguez Rodríguez


San Juan, Puerto Rico, a 30 de diciembre de 2010

Estoy conforme con lo expresado por la Jueza Asociada señora Fiol Matta en su voto particular disidente por lo cual me he unido a sus expresiones. Al igual de lo que se expresa en ese voto particular, considero, como poco, impertinentes las expresiones sobre el Juez Presidente señor Hernández Denton que contiene la Resolución que se certifica. Ello no obstante, escribo por separado esta breve expresión, por considerar que debe quedar meridianamente claro que la "censura" al Juez Presidente que se recoge en el texto de la Resolución no fue un asunto que se planteara y mucho menos discutiera ante el Pleno de este Tribunal. Lo

acordado en este caso fue lo de siempre en situaciones como éstas, emitir una sencilla resolución amonestando y archivando el asunto, sin más.

Las expresiones en contra del Juez Presidente estaban recogidas en un voto particular que se publicaría al publicarse la Resolución archivando la querella en el caso de epígrafe, y que reflejaría la posición del juez suscribiente. Posteriormente, los señores Jueces Asociados se unieron al voto particular y a raíz de ello se circuló un nuevo texto de Resolución que recogía íntegramente la expresión individual circulada originalmente, ahora con pretensiones de ser una expresión del cuerpo colegiado.

Debo rechazar enérgicamente el subterfugio de utilizar la formalidad de una expresión del Tribunal como institución en un caso concreto, para traer a la palestra un asunto que nada tiene que ver con el caso de epígrafe. Y más grave aún, utilizar el caso de epígrafe como vehículo para la supresión del derecho que le asiste al Juez Presidente, en el descargo del rol que le asigna la Constitución del Estado Libre Asociado de Puerto Rico, de expresarse sobre un asunto de vital importancia para la institución en que servimos. El asunto en torno al aumento del número de jueces que componen la plantilla del Tribunal Supremo es un asunto de alto interés público sobre el cual cualquier funcionario público tiene un derecho bajo la Constitución del Estado Libre Asociado, así como la de Estados Unidos, a expresar su criterio, el que fuere. Lo que no puede hacer el "nuevo" Tribunal, es pretender

acallar la voz de quienes discrepan de sus andanzas. Somos jueces, no censores del debate.

El curso de acción que se ha seguido en este caso rezuma intolerancia con el criterio divergente por lo cual debo, penosamente, disentir de la ruta trazada.


Anabelle Rodríguez Rodríguez
Juez Asociada