ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| EL PUEBLO DE PUERTO RICO<br><br>Parte Recurrida<br><br>v.<br><br>HÉCTOR ENRIQUE CORDERO<br><br>Parte Peticionaria | TA2025CE00203 | *Certiorari Criminal,* procedente del Tribunal de Primera Instancia, Sala Superior de Guayama<br><br>Caso Núm.:<br><br>G SC2023G0133 AL SC2023G0140<br><br>Sobre:<br><br>Art. 401 LSC (8 cargos) Reclasificado a Art. 404 LSC (8 cargos) |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Monge Gómez y la Jueza Prats Palerm.

Monge Gómez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de octubre de 2025.

Compareció ante este Tribunal la parte peticionaria, el Sr. Héctor Enrique Cordero (en adelante, "señor Cordero" o "Peticionario"), mediante recurso d*e Certiorari* presentado 25 de julio de 2025. Nos solicitó la revocación de la *Sentencia de Revocación de Probatoria* emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama (en adelante, "TPI"), el 2 de julio de 2025. Mediante el referido dictamen, el TPI revocó la sentencia suspendida que le fue concedida, debido al incumplimiento de las condiciones generales y especiales impuestas.

Por los fundamentos que expondremos a continuación, *expedimos* y *confirmamos* el dictamen recurrido.

**I.**

El Ministerio Público presentó varias acusaciones contra el señor Cordero por ocho (8) infracciones al Artículo 401 de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como la "Ley de Sustancias

Controladas de Puerto Rico", 24 LPRA sec. 2401 *et seq.* (en adelante, "Ley de Sustancias Controladas").

Así las cosas, el 26 de enero de 2024, el TPI dictó *Sentencia* mediante la cual se le impuso una pena total de doce (12) años y se le concedió el beneficio de sentencia suspendida, a cumplirse de forma consecutiva entre sí por los delitos imputados. Como parte de su condena, el foro recurrido le impuso una serie de condiciones generales y especiales:

1. Usted no encubrirá u ocultará sus actividades al (a la) Técnico de Servicios Socio penales, ni mentirá acerca de éstas, ni entorpecerá, en forma alguna, cualquier investigación que el Programa de Comunidad de la Administración de Corrección tenga a bien hacer sobre el particular. Permitirá que el(la) Técnico de Servicios Socio penales le visite en su hogar, trabajo u otro lugar.

2. Usted permanecerá constantemente y sin interrupción dentro de la jurisdicción territorial de la Sala Superior de Guayama. Siempre que tenga necesidad de trasladarse fuera de este límite, solicitará el permiso para ello al (a la) Técnico de Servicios Socio penales o al Tribunal.

3. Usted mantendrá intimado(a) al (a la) Técnico de Servicios socio penales sobre todo cambio de dirección trabajo y de toda información que facilite a éste(a) ponerse en contacto con usted lo más rápidamente posible y contestará inmediatamente cualquier comunicación que reciba de él(ella) o del Programa de Comunidad de la Administración de Corrección.

4. Usted se someterá a aquellos exámenes de laboratorio; exámenes médicos, psiquiátricos y psicológicos y cualquier otra evaluación necesaria, para el tratamiento y rehabilitación que el Tribunal o la o el Técnico de Servicios Socio penales crea necesario para lograr su rehabilitación.

5. Usted no frecuentará bares, sitios donde se realicen juegos de azar prohibidos por ley ni centros de dudosa reputación y, se abstendrá de usar bebidas alcohólicas. Además, usted no incurrirá en conducta delictiva ni se asociará con personas reconocidas por su participación en actividades ilegales mientras esté disfrutando de los beneficios que le concede la ley.

6. Usted se abstendrá de usar drogas narcóticas y otros estupefacientes, salvo por prescripción médica. Además, usted consentirá a someterse a un programa regular para la detección de presencia de sustancias controladas mediante pruebas confiables que permita su orientación, tratamiento y rehabilitación.

7. Usted se mantendrá empleado(a) en un trabajo apropiado o proseguirá estudios en una escuela o colegio reconocido; someterá evidencia de dicho empleo o estudios y, notificará inmediatamente al (a la) Técnico de Servicios Socio penales todo cambio en horario o, cese en el trabajo o estudios.

8. Cualquier violación a las leyes vigentes en Puerto Rico podrá conllevar la revocación de esta orden, en cuyo caso usted cumplirá la sentencia impuesta de acuerdo con la ley. Usted consentirá a que, de ser acusado(a) de cometer un delito grave, se celebre juntamente con la vista de determinación de causa probable, la vista sumaria inicial. La determinación de causa probable de la comisión de un nuevo delito es causa suficiente para, en ese momento, revocar provisionalmente los beneficios de la libertad a prueba.

9. Cualquier violación de las condiciones que por la presente se le imponen o de las que de tiempo en tiempo se le impusieren dentro del régimen a prueba a que se le somete, podrá implicar la revocación de la orden de suspensión de los efectos de la sentencia y usted podrá ser recluido(a) en prisión donde cumplirá la totalidad de la sentencia impuesta de acuerdo con la Ley.

10. Cualquier conducta antisocial o reñida con la moral podrá ser suficiente para que se revoque la orden de suspensión de los efectos de la sentencia; aunque tal conducta no constituya violación a las leyes vigentes en Puerto Rico.

11. Usted consentirá a que se le revoque su libertad a prueba en su ausencia si usted abandona la jurisdicción o se desconoce su paradero por haber cambiado de dirección sin haberlo informado al (a la) técnico de servicios socio penales.

12. Se ordena al Ministerio Público que notifique esta sentencia al (a la) Director(a) Administrativo(a) del Sistema de Información de Justicia Criminal, adscrito al Departamento de Justicia.

**CONDICIONES ESPECIALES**:

1. Deberá culminar tratamiento en el área de sustancias controladas en el Programa Instituto de Reeducación de PR.

2. Deberá estar en su residencia en antes de las 7:00 pm todos los días, excepto por motivos de estudio o trabajo o por otras razones justificadas previa autorización, del Técnico de Servicios Socio penal asignado.

3. Deberá ser evaluado en el área de salud mental y someterse al tratamiento de ser recomendado.

4. No podrá bajo ningún concepto ir al Municipio de Guayama, a excepción de sus visitas al Tribunal.

5. Deberá realizar gestiones para obtener su licencia de conducir.

6. Deberá presentar gestiones de empleo.

7. Se someterá a pruebas toxicológicas de forma aleatoria.

8. Será supervisado en horario diurno y nocturno.

9. Se le autoriza a relacionarse con el Sr. Richard Paris Gumbs, padre de crianza, quien se beneficia de Libertad a Prueba, solo y exclusivamente en actividades familiares.[1]

---

[1] *Véase*, Apéndice SUMAC TA, Entrada Núm. 3, págs. 1-2.

Posteriormente, el 28 de junio de 2024, el Ministerio Público presentó varias denuncias en contra del señor Cordero por infracción al Artículo 401 de la Ley Núm. 4-1971, *supra*. Ese mismo día se determinó causa probable para el arresto del Peticionario. Fundamentado en lo anterior, el Estado solicitó la revocación provisional de la sentencia suspendida y la celebración de una vista final de revocación.

Más adelante, el 8 de julio de 2024, la Sra. Edna M. Berríos Varela, Técnica de Servicios Socio Penales (en adelante, "señora Berríos Varela" o "Técnica Socio Penal"), rindió un "**Informe Complementario de Informe de Violación de Condiciones**" (en adelante, *Informe de Violación de Condiciones*) en el que se alegó que el Peticionario arrojó positivo a fentanilo y cocaína. El documento aduce que el 3 de julio de 2024, se recibió una notificación de baja del Programa Instituto de Reeducación de Puerto Rico. En el mismo se expuso que el Peticionario recibió la última terapia el 16 de mayo de 2024 y que se había ausentado a cinco (5) de un total de doce (12) terapias grupales. Por último, expuso que el Peticionario estaba citado para una cita con la Técnica Socio Penal el 21 de junio de 2024 y éste no se presentó. Así las cosas, concluyó que el señor Cordero incumplió las condiciones generales uno (1) hasta la diez (10) y las condiciones especiales uno (1), cuatro (4), cinco (5) y seis (6). Por tanto, recomendó que se continuara el proceso de revocación en contra del Peticionario.

Luego de varios trámites procesales de rigor, el 1 de julio de 2025, el TPI dictó *Sentencia* en la que se le absolvió de los delitos imputados el 28 de junio de 2024. Evaluada la solicitud de revocación, el expediente judicial y la prueba presentada durante la vista final de revocación, el 2 de julio de 2025, el TPI emitió *Sentencia* mediante la cual concluyó que el señor Cordero violó las condiciones generales y especiales, según fueron imputadas en el *Informe de Violación de Condiciones*. Por tanto, revocó la sentencia suspendida, ordenó el arresto del Peticionario y el cumplimiento de la pena impuesta en reclusión por la totalidad de los doce (12) años, a

ser cumplidos de forma consecutivas entre sí y con cualquier otro caso que estuviere cumpliendo.

Inconforme con lo anteriormente resuelto, el señor Cordero acudió ante este Tribunal mediante el recurso de epígrafe, en el que señaló el siguiente error:

> **PRIMER SEÑALAMIENTO DE ERROR- ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL REVOCAR LA PROBATORIA, PUES NO EXISTÍAN FUNDAMENTOS PARA SOSTENER ESTA DETERMINACIÓN.**

El 14 de octubre de 2025, el Ministerio Público, por conducto de la Oficina del Procurador General, presentó un "**Escrito en Cumplimiento de Orden**".

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

## A.

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. 800 Ponce de León v. AIG, 205 DPR 163, 174 (2020); Mun. de Caguas v. JRO Construction, 201 DPR 703, 711 (2019). A pesar de ser un recurso procesal excepcional y discrecional, el tribunal revisor no debe perder de vista las demás áreas del derecho. Mun. de Caguas v. JRO Construction, *supra,* pág. 711.

Así, con el objetivo de ejercer de manera prudente nuestra facultad discrecional, es preciso acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40; Banco Popular de Puerto Rico v. Gómez Alayón, 213 DPR 314, 336-337 (2023). Esta norma cobra mayor relevancia en situaciones en las que no hay disponibles métodos alternos para asegurar la revisión de la determinación cuestionada. Íd. A esos efectos, la referida Regla establece los siguientes criterios a evaluar:

> A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
>
> B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Íd.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debe ser utilizado con cautela y por razones de peso. Pueblo v. Díaz de León, 176 DPR 913, 918 (2009). En ese sentido, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. García v. Padró, 165 DPR 324, 334 (2005). También se ha definido como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Banco Popular de Puerto Rico v. Gómez Alayon, *supra*, pág. 13. En otras palabras, el adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". Pueblo v. Ortega Santiago, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. SLG Flores, Jiménez v. Colberg, 173 DPR 843 (2008).

**B.**

La Ley Núm. 259 de 3 de abril de 1946, según enmendada, conocida como la "Ley de Sentencia Suspendida y Libertad a Prueba"*,* 34 LPRA sec. 1026 *et seq.* (en adelante, "Ley de Sentencia Suspendida"), fue creada con el propósito de establecer "la sentencia probatoria en el sistema judicial de Puerto Rico; para disponer en qué casos deberá suspenderse el efecto de la sentencia y ponerse al sentenciado a prueba, proveyendo para ello; para

fijar los requisitos necesarios que deben concurrir para la imposición de tal sentencia probatoria, y para otros fines." Exposición de motivos, Ley de Sentencia Suspendida, *supra*. En ella, la Asamblea Legislativa estableció el privilegio que permite a un convicto cumplir su sentencia o parte de ésta fuera de las instituciones penales. Pueblo v. Vélez Torres, 212 DPR 175, 182 (2023). Ahora bien, la concesión de este privilegio reposa preponderantemente en el sano ejercicio de la discreción judicial. Pueblo v. Vázquez Carrasquillo, 174 DPR 40, 46-47 (2008).

Así pues, el Artículo 2A de dicho cuerpo estatutario le reconoce al tribunal sentenciador la potestad de imponer las condiciones que razonablemente entienda al momento de dictar la sentencia, incluyendo el compromiso del probando de no incurrir en conducta delictiva y de no asociarse con personas reconocidas por su participación en actividades ilegales mientras disfrute de los beneficios reconocidos en la Ley. 34 LPRA sec. 1027a. De igual forma, la determinación de causa probable de la comisión de un nuevo delito es causa suficiente para, en ese momento, revocar provisionalmente los beneficios de la libertad a prueba. Íd. En consonancia con lo anterior, el Ministerio Público tiene el peso evidenciario y la determinación del juzgador deberá estar formulada a base de preponderancia de la prueba. 34 LPRA sec. 1029.

Con relación al modo de cumplir la sentencia suspendida, el foro primario podrá revocar la sentencia y ordenar su ejecución para el cumplimiento en cárcel, cuando el probando incumpla las condiciones impuestas. Pueblo v. Ortega Santiago, 125 DPR 203, 210 (1957). Cónsono a ello, el Artículo 4 de la Ley Núm. 259, *supra*, establece, en su parte pertinente, que:

> El tribunal sentenciador podrá en cualquier momento en que a su juicio la libertad a prueba de una persona fuere incompatible con la debida seguridad de la comunidad o con el propósito de rehabilitación del delincuente, revocar dicha libertad y ordenar la reclusión de la persona por el período de tiempo completo señalado en la sentencia cuya ejecución suspendió para ordenar la libertad a prueba, sin abonarle a dicha persona el período de tiempo que estuvo en libertad a prueba. Íd.; *véase, además*, Pueblo v. Vélez Torres, *supra*, pág. 182.

En cuanto a la vertiente procesal, la norma es que, a pesar de que el probando no es una persona enteramente libre, una vez el Estado le confiere el derecho limitado a estar en libertad, no se puede revocar sin un debido proceso de ley. Pueblo v. Ortega Santiago, *supra* pág. 210. Para cumplir con las garantías de un debido proceso de ley se requiere, al menos, lo siguiente: (1) una vista preliminar para determinar si hay causa probable para creer que el probando ha violado las condiciones de su probatoria; y (2) una vista final antes de la decisión definitiva sobre si la probatoria será revocada. Martínez Torres v. Amaro Pérez, 116 DPR 717, 725 (1985). Distinto a la vista inicial, en la que por su carácter informal y sumario sólo se auscultan probabilidades, en la vista final, además de contar con garantías constitucionales mínimas, tales como notificación y vista, el procedimiento estatutario para la revocación de la libertad a prueba requiere que exista motivo justificado y dar al convicto la oportunidad de ser oído. Íd., págs. 725-726.

Es evidente que se requiere que el proceso sea uno flexible y discrecional, así pues, el Tribunal Supremo expresó que:

> [D]e una lectura integral de las disposiciones de la Ley de Sentencia Suspendida se desprende, con meridiana claridad, que la discreción es parte o eje vital del esquema teórico de la misma. La razón es sencilla: para lograr los objetivos de este sistema resulta indispensable que los jueces de instancia tengan una gran flexibilidad, o discreción, en la administración de la misma. El logro del objetivo de la rehabilitación del convicto que persigue este sistema depende en gran medida de la facultad del juez de poder individualizar cada caso, imponiendo las condiciones pertinentes y necesarias que en su opinión la situación particular ante su consideración requiere y amerita. Pueblo v. Vega Vélez, 125 DPR 188, 201 (1990).

Finalmente, y según hemos adelantado, el grado de prueba en la vista final de revocación está regida por la preponderancia de prueba. 34 LPRA sec. 1029 (c)(b). Ello así porque no existe una intención de "equiparar la segunda etapa de revocación de probatoria a la de un procedimiento criminal; es una pesquisa limitada; el proceso debe ser lo suficientemente flexible como para considerar evidencia tales como cartas, afidávit y otro material de ordinario inadmisible en un proceso criminal adversativo". Martínez Torres v. Amaro Pérez, *supra*, pág. 724.

**C.**

Es norma sólidamente establecida en nuestra jurisdicción que no se favorece la intervención de los tribunales apelativos al momento de revisar la apreciación de la prueba, la adjudicación de credibilidad o las determinaciones de hechos formulados por el Tribunal de Primera Instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto. Pueblo v. Negrón Ramírez, 213 DPR 895, 910 (2024); Pueblo v. Hernández Doble, 210 DPR 850, 864 (2022). Por tal razón, se les concede gran deferencia a las determinaciones de hechos realizadas por los juzgadores de instancia, así como a las adjudicaciones de credibilidad que estos hacen sobre los testigos que declaran ante ellos. Pueblo v. Negrón Ramírez, *supra*, pág. 18. Esto responde al hecho de que son el Juez y el Jurado los que están en mejor posición para aquilatar la prueba testifical al tener la oportunidad de oír, ver y apreciar el comportamiento de los testigos. Íd., pág. 16; Pueblo v. Hernández Doble, *supra*, pág. 864. Esto adquiere mayor relevancia cuando se trata de la prueba oral desfilada en el juicio. Pueblo v. Negrón Ramírez, *supra*, págs. 16-17. Además, "[e]l veredicto del Jurado, como la sentencia del [J]uez, es un acto investido con la alta dignidad de la magistratura en la función juzgadora de la conducta de los hombres, y no es para echarse a un lado con liviandad e indiferencia". Pueblo v. Figueroa Rosa, 112 DPR 154, 159 (1992).

Ahora bien, se ha reconocido que a pesar de la deferencia que merece la determinación apelada, la misma podría ser revocada si: (1) se demuestra que hubo pasión, prejuicio o parcialidad y/o si se incurre en error manifiesto o (2) si la prueba no concuerda con la realidad fáctica, es increíble o imposible. Pueblo v. Santiago, 176 DPR 133, 148 (2009). Es decir, los tribunales apelativos tienen la potestad de sustituir el criterio de los tribunales de instancia en aquellas ocasiones en que, "a la luz de la prueba admitida, no exista base suficiente que apoye su determinación". Pueblo v. Hernández Doble, *supra*, pág. 865.

Nuestro más alto foro ha definido pasión, perjuicio o parcialidad como "aquellas inclinaciones personales de tal intensidad que llevan a un

juzgador a actuar movido por éstas y a adoptar posiciones, preferencias o rechazos con respecto a las partes o sus causas, sin admitir cuestionamientos sobre las mismas y sin importar la prueba que se haya presentado en el juicio". Pueblo v. Negrón Ramírez, *supra*, pág. 19. Por otro lado, han expresado que "las conclusiones del tribunal se considerarán claramente erróneas si un análisis de la totalidad de la evidencia recibida revela que las conclusiones están en conflicto con el balance más racional, justiciero y jurídico". Pueblo v. Hernández Doble, *supra*, pág. 865.

**III.**

En el caso que nos ocupa, el Peticionario nos requirió dejar sin efecto la *Sentencia* mediante la cual se revocó su privilegio de sentencia suspendida y, en consecuencia, ordenemos su excarcelación.

Como único señalamiento de error esgrimido, el señor Cordero sostiene que el TPI erró al revocarle su probatoria, a pesar de que no existían fundamentos válidos para emitir dicha determinación. No nos convence su postura. Veamos.

Del expediente ante nuestra consideración se desprende que, el 26 de enero de 2024, el TPI dictó *Sentencia* contra el señor Cordero tras hallarlo culpable de múltiples infracciones a la Ley de Sustancias Controladas, *supra*, e impuso una pena total de doce (12) años de reclusión, concediéndole el privilegio de sentencia suspendida. Como parte de dicho beneficio, el foro de instancia le impuso diversas condiciones generales y especiales dirigidas a garantizar su rehabilitación y supervisión, entre ellas, someterse a tratamiento en el área de sustancias controladas, abstenerse de visitar el Municipio de Guayama sin autorización, realizar gestiones de empleo y tramitar su licencia de conducir.

Posteriormente, el Ministerio Público presentó varias denuncias en contra del Peticionario por nuevas infracciones a la Ley de Sustancias Controladas, *supra*, y solicitó la revocación provisional de la sentencia suspendida y la celebración de una vista final de revocación. Celebrada la vista final de revocación y evaluada la prueba presentada el 2 de julio de

2025, el foro *a quo* concluyó que el señor Cordero incumplió varias de las condiciones impuestas, razón por la cual revocó el privilegio de sentencia suspendida y ordenó el cumplimiento de la pena de doce (12) años en reclusión.

Conforme adelantáramos en los acápites anteriores, la Ley de Sentencia Suspendida, *supra*, permite que un convicto cumpla su sentencia fuera de una institución penal bajo condiciones impuestas por el tribunal, privilegio que descansa en el sano ejercicio de la discreción judicial. Pueblo v. Vázquez Carrasquillo, *supra*, pag. 46-47. Así pues, dicho beneficio puede ser revocado cuando la libertad a prueba resulte incompatible con la seguridad de la comunidad o **con el objetivo rehabilitador que persigue, sin necesidad de una convicción penal, bastando demostrar por preponderancia de la prueba, el incumplimiento de las condiciones impuestas**. Pueblo v. Vélez Torres, *supra*, pág. 182.

Como fundamento para su petitorio, el señor Cordero plantea que durante la vista final de revocación de probatoria no se presentaron los elementos suficientes para fundamentar tal decisión. Sostiene, además, que los incumplimientos en los que incurrió podían ser trabajados de manera interna.

Tras un análisis sosegado y comprensivo del expediente ante nuestra consideración, incluyendo la Transcripción de la Prueba Oral (en adelante, "TPO") de la vista final de revocación, hemos arribado a la conclusión de que el TPI actuó correctamente al revocarle al señor Cordero el privilegio de la sentencia suspendida. Nos explicamos.

En el caso de autos, el Ministerio Público presentó como testigo a la Sra. Edna Berríos Varela (en adelante, "señora Berríos Varela"), técnica socio penal encargada de la supervisión del Peticionario durante el cumplimiento de su sentencia suspendida.[2] La señora Berríos Varela declaró bajo juramento que el señor Cordero fue referido al Instituto de Reeducación de Puerto Rico para recibir tratamiento por uso de sustancias

---

[2] *Véase*, SUMAC-TA, entrada núm. 12, anejo 1, pág. 8, líneas 14-15 de la TPO.

controladas, del cual se ausentó en cinco (5) ocasiones, recibiendo solo doce (12) terapias, y que el 16 de mayo de 2024 arrojó positivo a fentanilo y cocaína, admitiendo su consumo.[3] A raíz de ese resultado, declaró que fue ingresado a un programa de recaídas para continuar con su rehabilitación, pero no regresó a recibir tratamiento ni compareció a una cita pautada con la señora Berríos Varela el 21 de junio de 2024, sin notificar ni ofrecer justificación alguna.[4]

Asimismo, la señora Berríos Varela relató que el señor Cordero incumplió con varias condiciones especiales, incluyendo la prohibición de visitar el Municipio de Guayama sin autorización, la obligación de realizar gestiones de empleo y de tramitar su licencia de conducir. En detalle, expresó que el Peticionario estuvo en el referido municipio el 22 de junio de 2024, lo cual dio lugar a la radicación de nuevas denuncias.[5] Destacó que nunca recibió evidencia de esfuerzos relacionados con el empleo ni con la obtención de la licencia de conducir.[6] También señaló que el señor Cordero omitió informar sobre una relación consensual con una joven residente en Guayama, hecho del que se enteró a través de familiares y durante el trámite de la revocación de la *Sentencia*.[7]

La señora Berríos Varela reconoció que el Peticionario fue absuelto de las nuevas acusaciones en su contra; sin embargo, enfatizó que ello no elimina el incumplimiento con las condiciones impuestas. Señaló que su solicitud de revocación provisional se fundamentó inicialmente en la alegada comisión de un nuevo delito, pero argumentó que, aun cuando el caso no prosperó, el hecho de que el Peticionario visitara el Municipio de Guayama en una ocasión para visitar a su pareja sin autorización constituía por sí solo, una violación suficiente para ser informada al tribunal, quedando a discreción de dicho foro determinar si procedía la revocación del privilegio concedido.[8]

---

[3] *Véase*, SUMAC-TA, entrada Núm. 12, anejo 1, págs. 10-11 de la TPO.
[4] *Véase*, SUMAC-TA, entrada Núm. 12, anejo 1, pág. 12 de la TPO.
[5] *Véase*, SUMAC-TA, entrada Núm. 12, anejo 1, págs. 12-14 de la TPO.
[6] *Véase*, SUMAC-TA, entrada Núm. 12, anejo 1, págs. 32-33 de la TPO.
[7] *Véase*, SUMAC-TA, entrada Núm. 12, anejo 1, pág. 42 de la TPO.
[8] *Véase*, SUMAC-TA, entrada Núm. 12, anejo 1, pág. 37 de la TPO.

Reconocemos que el proceso de rehabilitación que persigue la Ley de Sentencia Suspendida, *supra*, tiene un marcado componente terapéutico, enfocado en propiciar la reinserción social del convicto. Ahora bien, lo anterior no significa que el probando pueda desatender las condiciones impuestas por el tribunal sin consecuencia alguna. En el presente caso, el señor Cordero violó de manera clara la condición especial (4) de su sentencia suspendida, la cual le prohibía manifiestamente visitar el Municipio de Guayama, salvo para comparecer a vistas judiciales. Pese a esta restricción, se probó que el Peticionario estuvo en el referido municipio el 22 de junio de 2024, acto que constituye por sí solo una violación crasa a las condiciones de su probatoria y que es suficiente para justificar la revocación del privilegio concedido.

El mencionado incumplimiento cobra mayor relevancia al considerar que el señor Cordero tampoco notificó a su técnica socio penal que mantenía una relación consensual con una joven residente del municipio sobre el cual tenía prohibido acudir, información que sólo conoció a través de familiares y durante el proceso de revocación de probatoria. Dicha omisión no es insignificante, pues las condiciones impuestas exigen transparencia con el personal encargado de su supervisión. Lo anterior responde a la necesidad de evaluar adecuadamente el progreso del probado y asegurarse de que no incurra en conductas que comprometan su bienestar integral y rehabilitación, como, por ejemplo, visitar entornos que comprometen su recuperación.

A ello se suma que el Peticionario tampoco compareció a una cita pautada con la señora Berríos Varela el 21 de junio de 2024, sin excusarse ni informar las razones de su incomparecencia. Tampoco ofreció explicación alguna por su ausencia al tratamiento terapéutico al que fue referido tras arrojar positivo a sustancias controladas. De igual forma, incumplió con otras condiciones esenciales, como realizar gestiones de empleo y tramitar su licencia de conducir.

En conjunto, los incumplimientos antes especificados demuestran un patrón reiterado de desatención a las condiciones impuestas por el

Tribunal y una falta de compromiso con el proceso de rehabilitación que sirve de base al privilegio de la sentencia suspendida. Reiteramos, la violación de la condición especial que le prohibía visitar el Municipio de Guayama constituye una infracción grave que, conforme a la ley y jurisprudencia aplicable, resulta suficiente para justificar la revocación del beneficio concedido. Pero, como hemos adelantado, ese no fue el único incumplimiento desplegado por el señor Cordero. Además, se estableció preponderantemente que éste no se comprometió con su proceso terapéutico que estaba diseñado para obtener su rehabilitación.

En suma, de un examen detallado del expediente y de la prueba vertida en la vista final de revocación, no encontramos que el foro *a quo* haya actuado de forma arbitraria, caprichosa, en abuso de su discreción o que haya incurrido en error de derecho al decretar la revocación de la probatoria. Por el contrario, la determinación del foro de instancia encuentra amplio sustento en la prueba presentada. Por consiguiente, procede la revocación de la probatoria y el cumplimiento de la pena impuesta en reclusión.

**IV.**

Por los fundamentos que anteceden, los cuales hacemos formar parte integral de la presente *Sentencia*, *expedimos* el auto de *certiorari* y *confirmamos* el dictamen recurrido.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones